William J. Crangle, J.
Defendant makes an omnibus motion to dismiss the indictment and for various other forms of relief. The indictment charges five concurrent counts of crime arising out of defendant’s alleged offer to give public employment and a sum of money to one Charles Rosen, a potential political foe, to induce him not to enter a primary election against defendant who had been a member of the New York State Assembly for the past seven years and would stand for re-election in the fall of 1976. The People claim, in substance, that these offers were made by defendant to Rosen in a series of conversations which were tape-recorded by *1026 Rosen at the direction of the Special State Prosecutor for Health and Social Services, Charles J. Hynes.
The Special Prosecutor has been engaged in a State-wide investigation relating to activities in the licensing and operation of nursing homes since 1975, and in the summer of that year, some six months prior to the time of the events leading to the indictment, the Special Prosecutor commenced an investigation of defendant’s connections with nursing homes and those who operated them in his district.
The Special Prosecutor states that in January, 1976 Rosen came to the Special Prosecutor’s office and gave certain information about defendant’s connection with persons in the nursing home business and that, in addition, that defendant had indicated through an intermediary that he would amongst other things give Rosen a State job if he would promise not to run against him in the upcoming primary election. At the Special Prosecutor’s request Rosen met with defendant wearing a recording device. Based upon the ensuing conversations and the alleged subsequent partial performance at his Assembly office by defendant of his promises to Rosen, an indictment was returned by an Albany County Grand Jury.
The defendant urges that the Special Prosecutor’s investigation concerning defendant’s relationship with nursing home operations had been concluded some time before January, 1976 and that the Special Prosecutor was entirely unauthorized to conduct an investigation into Rosen’s complaint concerning an unlawful attempt to influence a primary election. Defendant says that the Special Prosecutor sought such evidence in order to use it to force defendant to eavesdrop upon his fellow legislators in connection with the nursing home investigation.
Defendant moves to dismiss the indictment based upon his claim that the Special Prosecutor’s investigation of his relationship with Rosen was ultra vires and extra-jurisdictional and that all of the fruits of his illegal investigation are tainted and must be suppressed under the doctrine expressed in Wong Sun v United States (371 US 471). The difficulty with this position is that although the investigation may have been beyond the express authority of the Special Prosecutor it was not beyond the constitutional limits of the government’s police powers. Taking the facts as defendant argues them to be in bis brief, the Special Prosecutor, as the government’s agent did not commit any act or take any course which could be *1027 considered as an invasion of any constitutional right of the defendant. A pretrial hearing on the matter, as requested by the defendant, would consequently serve no useful purpose. Therefore defendant’s motion in this respect and for discovery of transcripts of defendant’s conversations with Rosen submitted to the court in camera are denied subject to an audibility hearing which will be accorded in connection with that portion of the omnibus motion.
Though the Special Prosecutor was not authorized to present the case in court without further executive authority (Matter of Dondi v Jones, 40 NY2d 8) and assuming, although it is arguable (see, e.g., People v Yonkers Contr. Co., 24 AD2d 641, mod 17 NY2d 322), that he could not use the Grand Jury or government process to further his investigation (Masinia v United States, 296 F2d 871, 877; People v Blumenthal, Sup Ct, NY County, April 13, 1976, Melia, J.; People v Arocho, 85 Misc 2d 116), he did none of these things. The evidence obtained is therefore clearly admissible (United States v White, 401 US 745, rehearing den 402 US 990; People v Gibson, 23 NY2d 618, cert den 402 US 951) and properly supports the indictment.
It may be that an indictment obtained by a Special Prosecutor without further executive order under such circumstances would be subject to dismissal (People v Sam, 49 AD2d 732; People v Blumenthal, supra; but, see, Matter of Dondi, supra, in which such an indictment was reinstated by the Court of Appeals after dismissal by the Appellate Division, 2d Dept.). However, in the case at bar, after the evidence was obtained and with the consent of the Albany County District Attorney, the Special Prosecutor was given specific authority by the Governor and the Attorney-General to carry out the prosecution of this case by Executive Order No. 31 (9 NYCRR 3.31). "An Executive Order is ambulatory, and is alterable or revocable at the pleasure of the Governor.” (Matter of Dondi v Jones, 40 NY2d 8, 29, dissenting opn.)
Defendant’s position that Executive Order No. 31, requesting the Attorney-General to conduct the prosecution of this case, is unconstitutional because it is directed against a particular individual rather than a class cannot be supported. Executive Order No. 31 is an administrative document utilized in carrying out the executive’s duty to administer and enforce the law. The Governor is empowered under subdivision 2 of section 63 of the Executive Law to invoke the Attorney-Gener *1028 al’s residual power over all criminal actions in the State. Unlike legislation of a penal nature which must be of general application, the execution of the law, by its nature, has to be specifically directed against individuals. Although over a period of time the Penal Law should be enforced as to all persons in a general, fair and even-handed manner (People v Goodman, 31 NY2d 262, 268-269, rearg den 32 NY2d 705), it becomes necessary on a day-to-day basis for the executive to apply law enforcement measures and to assign personnel and resources as he reasonably believes them to be most effective to carry out the duties of his office (Oyler v Boles, 368 US 448; Matter of Cunningham v Nadjari, 39 NY2d 314). Thus, his executive order, directing the Attorney-General or his assistant or deputy to attend a term of Supreme Court in Albany County and to present evidence concerning the criminal proceeding of People v John Doe (Special Prosecutor for Health and Social Services File No. NY 9-16) as this case was entitled (9 NYCRR 3.31), and to prosecute such actions and proceedings relating thereto, is a proper exercise by the Governor of his executive power and violates no constitutional right of the defendant.
Defendant moves for a Huntley hearing pursuant to CPL 710.30 and CPL 710.40 and for discovery pursuant to CPL 240.20 (subd 1, par [b]) of his statement made on February 10, 1976. These motions are granted.
The Special Prosecutor argues for summary denial of the motion for a Huntley hearing without prejudice to its renewal upon sworn allegations supporting the grounds upon which the motion is based. He acknowledges that it is the People’s burden of proof upon a hearing to suppress a confession, but denies defendant’s right to a hearing without his first showing grounds upon sworn allegations of fact which if established would entitle defendant to the relief sought as a matter of law. This would allow for summary determination as contemplated by CPL 710.60 (subds 2, 3). However, CPL 710.60 (subd 3, par [b]) excludes from the requirement of sworn allegations of fact the question of statements involuntarily made "to a public servant engaged in law enforcement activity” (see CPL 710.20, subd 3). In this instance, then, the motion papers need only allege a ground constituting legal basis for the motion (CPL 710.60, subd 3, par [a]) and if the motion cannot be determined on the papers, subdivision 4 (CPL 710.60, subd 4) mandates a hearing. The defendant has indicated a setting, *1029 uncontradicted by the Special Prosecutor, which raises a sufficient constitutional question concerning the voluntariness of any statements given by defendant to entitle him to a plenary hearing (People v Agnostopulos, 77 Misc 2d 668; People v Harris, 68 Misc 2d 1089, 1091; see, also, People v Pease, 67 Misc 2d 359). The hearing will be scheduled after consultation by the respective attorneys with the court.
The omnibus motion also attacks each count of the indictment upon various grounds.
Count one charges corrupt use of position or authority in violation of section 448 of the Election Law. In substance, it is charged that defendant while holding public office as a State Assemblyman corruptly used and promised to use his official authority to secure Rosen public employment and an office upon consideration that Rosen’s political action (refraining from entering a primary election) would be used in behalf of the defendant. It is the defendant’s position that the statute is unconstitutional because the words "political action” are too vague to clearly and intelligently set forth the conduct proscribed and that it is over-broad in that its proscription inhibits debate on public and political issues in violation of the First Amendment of the Constitution of the United States.
The intendment and meaning of the words "political action” used in the subdivision under attack are clear when read in the context of the entire subdivision while applying the criteria recently reiterated by the Court of Appeals in People v Lang (36 NY2d 366) which held valid a similar statute. It is this court’s opinion that the statute enunciates the proscribed acts with which the defendant is charged with sufficient clarity and definiteness to give notice to a reasonable man of its prohibitions. The "certain and definite variety of acts” which are proscribed here are political acts and to carry out the purpose of the statute the Legislature could not be more specific and the alleged act promised by Rosen could not more perfectly fit the definition.
Nor does the statute in any way inhibit debate on public and political issues resulting in an unconstitutional restraint upon free speech. The statute confines itself to making the use of governmental power by an official a criminal act if corruptly designed to encourage the use of another person’s political influence and action in behalf of a candidate, officer or party. There is no constitutional right to use governmental power in this manner. The constitutional right to freedom of *1030 speech is not unlimited (Chaplinsky v New Hampshire, 315 US 568).
The defendant concedes that People v Lang (supra) is dispositive of his attack on the second count of the indictment.
The next count charges a violation of section 77 of the Public Officers Law, unlawful fees and payments. It charges, in substance, that the defendant agreed to receive a promise of reward, a thing of value and a thing of personal advantage (i.e., a promise from Rosen not to enter a primary election) for performing and omitting to perform an official act by using his official authority to create public employment for Rosen and by using his authority to obtain public employment for a nominee of Rosen’s. It is defendant’s position that Rosen’s promise to refrain from entering a primary election is not a "thing of value” or "personal advantage” and that these phrases relate to tangible objects only and that to hold that they extend to intangibles would render the statute unconstitutionally vague.
The court is unable to agree with this position. It seems clear that the Legislature used these terms for the very purpose of extending the effect of the statute beyond the tangible items of money or property to the intangible rewards encompassed in phrases such as "thing of value” and "thing * * * of personal advantage”. Since the common meaning of these terms is well known and defined, their use when read in context with the rest of the statute does not make the statute unconstitutionally vague (People v Lang, supra).
The indictment also charges attempt to commit grand larceny in the second degree in violation of sections 110.00 and 155.35 of the Penal Law in that the defendant recommended and caused Rosen’s nominee, Johnson, to be engaged and hired as a public employee on defendant’s legislative staff knowing at the time that Johnson would not earn the salary of the position and would pay it over to Rosen. The defendant argues that this does not constitute larceny and that this count of the indictment should be dismissed. Since Johnson was acting with the Special Prosecutor’s knowledge when he was placed on the payroll of the Assembly, the defendant is charged only with attempted grand larceny.
The allegations of the indictment are sufficient to constitute the crime charged. One who recommends a person for public employment and causes him to be hired by the State of New York is by inescapable inference representing that he will *1031 perform the work for which the salary is paid. The word, earn, is defined to mean "to receive * * * for one’s labor or service” (Webster’s New World Dictionary [Coll ed, 1966]). If the defendant caused the State to employ Mr. Johnson through his recommendation, then defendant led the State to believe that he would earn the salary; and if he knew that this was not true, he was guilty of attempting to steal money from the State for the benefit of Rosen (Penal Law, § 155.05, subd 2, par [d]). A larceny by false pretense need not be based upon an oral statement but may be based upon conduct (People v Bollettieri, 9 NY2d 629, cert den 366 US 950). The fact that the position of employment is one entirely within the discretion of the person making the nomination only serves to intensify the evil nature of defendant’s alleged act.
Defendant attacks the last count of the indictment which charges defendant with official misconduct in violation of section 195.00 of the Penal Law upon the ground that there is no claim in the indictment that he did anything in his official capacity which was not authorized. The count charges that he caused a person nominated by Rosen (Johnson) to be placed upon the payroll of the New York State Assembly at a certain salary and for a certain period with intent to obtain a benefit. Official misconduct makes it a crime for an official with intent to obtain a benefit to commit an act related to his office but constituting an unauthorized exercise of his official functions knowing that such act was unauthorized. This count of the indictment does not charge the defendant with appointing Johnson to a job which he knew would not be performed by Johnson, obviously an act which would not be authorized because defendant was not authorized to give State salaries as gifts. It merely charges the appointment and alleges defendant’s corrupt reason for making it. The crime has not been sufficiently pleaded. The People argue that the facts charged constitute a sale of a position of public employment by defendant and that he was not authorized to make such a sale. But the defining statute requires in addition to the corrupt motive that the act itself be unauthorized and without the scope of the defendant’s official duties. These words in the statute would have no purpose if the Legislature simply intended to say that every criminal act of a public servant relating to his office constitutes the crime of official misconduct. An officer may perform his official duties for an unworthy and illegal purpose without violating section 195.00 of the Penal Law *1032 though he would, no doubt, be in violation of other provisions of law of a penal nature (viz., Public Officers Law, § 77).
The case of People v Volpicello (72 Misc 2d 641) is distinguishable. In that case the court was dealing with a charge of official misconduct against a correction officer who allegedly assaulted an inmate of a jail. The defendant argued that the alleged act of assault was not an act relating to his office. The court held that an unauthorized act of a public servant can relate to his office within the meaning of section 195.00 of the Penal Law. No issue was raised in that case as to whether the assault itself was unauthorized, and it was concededly so. Despite language in the court’s opinion to the effect that a criminal offense by a public officer constitutes an unauthorized act per se when it relates to the function of the perpetrator’s public office, the court’s decision upon the facts before it was limited to a holding that an unauthorized act of a public servant may relate to his office even though it was beyond the precise scope of his official duties.
Here the defendant was concededly authorized to have Johnson placed upon the payroll of the New York State Assembly, presumably to work. He is alleged to have done nothing else. One of the elements of the crime required by the defining statute is therefore lacking and the count must be dismissed.
A motion for inspection of the Grand Jury minutes has previously been granted. The court has read the minutes and finds that there was sufficient evidence to support the counts of the indictment.
The defendant’s motion for discovery is granted in the following respects and the People are directed to state or provide:
(1) The time, date and place of defendant’s conversations with complainants, Rosen and Johnson.
(2) An opportunity prior to trial at a time to be fixed by the court for defendant to listen to the tape recordings at an audibility hearing before the court.
(3) Any evidence which comes into the possession or control of the Special Prosecutor or becomes known to him which tends to exculpate or is favorable to defendant.
(4) A copy of the Special Prosecutor’s transcript of the taped conversations at least five days prior to the audibility hearing.
*1033 In all other respects the defendant’s motion for a bill of particulars and discovery is denied.