Howard E. Goldfluss, J.
This is a case of first impression. It involves prosecution under a statute which has rarely if ever been utilized. There are no reported cases referring to its application.
The matter comes before this court by writ of habeas corpus. The petitioner contends that his detention is unlawful by reason of the fact that the statute which is the basis for his detention is unconstitutional, in that it is vague, overbroad, and violates due process under the Fourteenth Amendment and unlawfully violates his right to protected speech under the First Amendment.
The statute is section 250.20 of the Penal Law, which reads as follows:
"A person is guilty of divulging an eavesdropping warrant when, possessing information concerning the existence or content of an eavesdropping warrant issued pursuant to article seven hundred of the criminal procedure law, or concerning any circumstances attending an application for such a warrant, he discloses such information to another person; except that such disclosure is not criminal or unlawful when made to a state or federal agency specifically authorized by law to receive reports concerning eavesdropping warrants, or when made in a legal proceeding, or to a law enforcement officer or agency connected with the application for such warrant, or to a legislative committee or temporary state commission, or to the telephone or telegraph corporation whose facilities are involved.
"Divulging an eavesdropping warrant is a class A misdemeanor.”
On March 10, 1977, a Justice of the Supreme Court sitting in Bronx County authorized the interception of a telephonic communication transmitted over the telephone instrument used by one William Bennerson. Another Justice signed an extension of the original order.
On or about April 12, 1977, the target of this investigation, also known as "Daddy B”, was arrested. A note was found on Bennerson’s person reading as follows: "They are watching *656 you and Johnny, phone is tapped. Police name is Brennan and Lt. Donnelly-head of New York-boat comes in 15th of this month.”
On April 13, 1977, the confidential informant (whose original information was the basis for the issuance of the interception order in the first instance) was brought to the District Attorney’s office where she conceded that she had divulged the existence of the wiretap order to Michael Clarke, the petitioner herein. She maintained that he was the only person to whom she divulged that information. It is not contended that Clarke is in any way connected with the wiretap order proceeding.
Clarke was then apprehended, and after being advised of his rights, he admitted that the confidential informant had told him about the wiretap but denied that he wrote the note.
However, at the preliminary hearing, the People offered testimony of one Chauncey Jones. She testified that Clarke told her that he knew of a way to get some money from "Daddy B”. He then gave her the note and told her to memorize it. She made a phone call to "Daddy B”, and met him at a restaurant giving him the note. She testified further that "Daddy B” took the note from her and gave her $40 which she shared with Clarke, "getting high.”
In order to determine if the petitioner is correct in his contention, certain tests must be applied to the statute. It is an essential element of due process of law that no person shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed (see United States v Harriss, 347 US 612; Bouie v City of Columbia, 378 US 347). A generally worded statute must be intended to punish conduct which is constitutionally punishable. It must give notice to the accused of the illegality of his act, but it must also set forth a boundry between the constitutional permissible and impermissible applications of the statute (see Wright v Georgia, 373 US 284).
Reasonable certainty is all the more essential when vagueness or overbreadth could result in an individual being induced to forego his right of speech. Even if it can be maintained that this statute gives fair notice to the accused, this court must also consider the possibility that the statute is susceptible of imposing a chilling effect on free speech. As was stated in N.A.A.C.P. v Button (371 US 415, 438) "only a compelling State interest in the regulation of a subject within *657 the State’s constitutional power of regulation can justify limiting First Amendment freedoms.” N.A.A.C.P. v Button (supra) made it clear that the objectionable qualities of vagueness and overbreadth do not depend upon fair notice to a criminally accused or upon unchanneled delegation of legislative powers, but upon the danger of tolerating in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper applications.
Before being called on to determine the constitutionality of a statute, a court must first determine that the issues raised reach constitutional proportions. A close inspection of the wording of section 250.20 indicates that constitutional interpretation is not only appropriate, but unavoidable. This is a statute which outlaws speech. Statutes which purport to penalize utterances, printed or spoken, must be distinguished from all others because a challenge to their validity is invariably based upon First Amendment guarantees. Vague or overbroad statutes in any area suffer a possible constitutional infirmity, but a greater degree of scrutiny must be given to a statute which could convict a person for an utterance (see Ashton v Kentucky, 384 US 195). The Supreme Court said in Button that First Amendment freedoms need breathing space to survive and government may regulate in that area with narrow specificity. Stricter standards of permissible vagueness or overbreadth must be applied to any statute which purports to restrain the free dissemination of information, ideas and normal communications between citizens (Smith v California, 361 US 147).
Notwithstanding these rigid restrictions, the fact that a particular statute limits speech does not render it per se unconstitutional. The Supreme Court has, in three instances, found that such limitations were reasonable and subservient to compelling and legitimate governmental interests, i.e., "fighting words” (Chaplinsky v New Hampshire, 315 US 568), obscenity (Miller v California, 413 US 15), and incitement to overthrow the government by force or violence (Dennis v United States, 341 US 494). The statute in this case comes within none of these categories, and since there is no precedent, it is incumbent on this court to determine if the governmental interest herein is of such compelling nature as to make this defendant’s First Amendment constitutional guarantees subservient.
A State has a legitimate interest in expecting information *658 to remain confidential if it comes to the attention of State officials or employees. One can readily understand why the Legislature has created a law which makes the divulgence of wiretapping information a criminal act, and that the District Attorney has utilized this statute. In the war on crime, especially the insidious practice of drug importing which is involved herein, the confidentiality of all facets of a police undercover operation must be secured. We have witnessed in this case what the inevitable result of the leak was — frustration of the entire operation, causing weeks and possibly months of utilization of personnel, planning, preparation and large expenditures — all productive of nothing. There is no directly analogous statute in the United States Code which parallels section 250.20. But section 1905 of title 18 of the United States Code does deal with the disclosure of confidential information. It reads as follows: "Whoever, being an officer or employee of the United States or of any department or agency thereof, publishes, divulges, discloses or makes known in any manner or to any extent not authorized by law any information coming to him in the course of his employment or official duties * * * shall be fined not more than $1000, or imprisoned not more than one year, or both; and shall be removed from office or employment.”
This latter statute imposes a curb on speech, but its permissability is persuasive. Quoting Justice Marshall in Kelley v Johnson (425 US 238, 245) " 'It cannot be gainsaid that the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general.’ ” (See, also, Pickering v Board of Educ., 391 US 563; People v Hochberg, 87 Misc 2d 1024.)
This defendant is neither an official nor an employee of the State. He was in no way connected to the original wiretap proceeding, either officially or unofficially, and had no knowledge of its existence until he was told about it by the confidential informer and after the order had been obtained. This statute makes no distinction as to the status of the prospective target. It seeks to prohibit public employee and private citizen alike from disclosing information. It makes the mere transmission of information a crime — by anyone to anyone.
This differs significantly from the thrust of section 1905 of title 18 of the United States Code, and the rationale set forth in the Kelley, Pickering and Hochberg cases. Compelling *659 governmental interest lies not only in the disclosure itself— the status of the defendant is an important and necessary additional element. It is obvious on its face that an employee or official whose occupation makes him privy to governmental secrets, can do inestimable damage by disclosing such information. This is far different from a private citizen who hears information which could be double, triple or quadruple hearsay — which could be fact or fancy — and which the transmitter could not have possibly verified. It is difficult to equate compelling governmental interest with restraining a citizen from communicating a rumor. With little imagination one could speculate how dangerous such restrain could be. Indeed, a case could be made for declaring a compelling governmental interest in seeing that such a restraint not be imposed.
If section 250.20 identified the persons, who were its targets, as does section 1905 of title 18 of the United States Code, then the restraint would be reasonable and the governmental interest would be sufficiently compelling so as to override First Amendment considerations. As the statute now stands, if one hears about the existence or possesses some information concerning an eavesdropping order, through "street” sources, and he passes this information to a friend, and if the friend passes it on to another, until 100 people hear it and transmit it, then each of those hundred people is guilty. To impose a duty on this defendant and any others he might have told, to refrain from disseminating information, is in effect punishing him for speaking freely. There is no common-law duty to curb such communication and any statute which purports to do so defies the constitutional protections which the First and Fourteenth Amendments guarantee.
In Chaplinsky v New Hampshire (315 US 568, 572, supra) the "fighting words” case, the Supreme Court characterized the restraint therein as being of "such slight social value * * * that, any benefit that may be derived * * * is clearly outweighed by the social interest in order and morality.” The contrary is true here, in a free society, nothing has more social value than the right to communicate without fear of being prosecuted for doing so.
It has been repeated ad infinitum that legislative acts have a strong presumption of validity as to constitutionality. A court should not pass on a constitutional question if there is any other way of disposing of a case (Matter of Security Trust Co. of Rochester, 275 App Div 1020), should uphold a legisla *660 tive act wherever possible (People v Nebia, 262 NY 259) and should not declare a statute unconstitutional unless required to do so by the most cogent reasons or compelled by unanswerable grounds. In short, alternatives to a finding of unconstitutionality must be sought because it is the obligation of a court to construe a statute to preserve its constitutionality wherever possible (see People v Epton, 19 NY2d 496; People v Heller, 33 NY2d 314). Despite these precise admonitions, the fact is that a pure constitutional issue is present and cannot be ignored. Based upon its findings herein stated, this court has two alternatives. It can hold that section 250.20 is unconstitutional on its face and must, therefore, be stricken in toto, or find the statute is unconstitutional as applied to this defendant.
In the typical "as applied” case, the theory is that the challenger’s speech is constitutionally protected under any statute. That is the situation here. A valid public interest exists for the State to insure confidentiality. Section 250.20 could apply to a certain class of citizens. But under no circumstances can the statute apply to the petitioner Clarke. As to him, it is an arbitrary and unreasonable exercise of the police power of the State, infringing upon guaranteed liberties. Therefore, this court can construe the statute so as to narrow its proscription, and by doing so, avoid the necessity of determining the need to strike the entire statute as unconstitutional. This is a vehicle that the Supreme Court has repeatedly urged State courts to utilize (see Cox v Louisiana [1], 379 US 536; Cox v Louisiana, [2], 379 US 559; Street v New York, 394 US 576; Spence v Washington, 418 US 405). In these cases, substantial and legitimate State interest was submitted to the court to limit its unconstitutional finding "as applied” to the defendant only.
It is interesting to note that the Supreme Court will not construe a State statute, but urges the State courts to make a narrowing construction wherever possible so as tb save the statute from being stricken as unconstitutional on its face. In Gooding v Wilson (405 US 518) the Supreme Court struck down as unconstitutional a Georgia State statute which provided that a person was guilty of a misdemeanor who uses "opprobrious words or abusive language tending to a breach of the peace.” The court in Gooding reiterated the principle that if there is a readily apparent construction for rehabilitating a statute a State court must do so. A reading of the case indicates that the "words” were susceptible of being narrowed *661 to conform to the permissible "fighting words” of Chaplinsky v New Hampshire (315 US 568, supra). But the Georgia State court made no effort to narrow or rehabilitate the statute. The Supreme Court indicated that it had no choice but to strike the entire statute, indicating that it had a reluctance to do so.
Hopefully, this court by this decision has placed a satisfactory limiting construction on the statute which can be acceptable to appellate courts so that the statute can be preserved.
The reason that this court is not determining the issue of constitutionality on its face is that having utilized the "as applied” theory, the issue does not have to be considered and under constraint of the decisions cited herein which strongly urge avoidance wherever possible, will not be. But the vulnerability of this statute as written still exists. Notwithstanding that the general objective of this statute is in the public interest, a proper target of this law could have a claim of "on its face” unconstitutionality, and paradoxically as it may appear, could conceivably be in a better position to succeed in such endeavor than the petitioner herein. The dissent explained this in Coates v Cincinnati (402 US 611, 619-620): "Although a statute may be neither vague, overbroad, nor otherwise invalid as applied to the conduct charged against a particular defendant, he is permitted to raise its vagueness or unconstitutional overbreadth as applied to others, and if the law is found deficient in one of these respects, it may not be applied to him either, until and unless a satisfactory limiting construction is placed on the statute * * * The statute, in effect, is stricken down on its face. This result is deemed justified since the otherwise continued existence of the statute in unnarrowed form would tend to suppress constitutional protected rights.”
To illustrate the above as it applies to this case, if the police officer, or Judge, or Assistant District Attorney, or court officer, or court reporter or anyone acting in his official capacity unlawfully divulges the existence or contents of the original wiretap order, he would have no justifiable claim of unconstitutionality as to him. He could, nevertheless, prevail on the constitutional issue by claiming that the overbreadth made the statute so sweeping on its face that it violated First and Fourteenth Amendment protections of those who could not be constitutionally justified targets.
Therefore, it would be prudent for the Legislature to draft this statute in a manner which clearly sets forth a compelling *662 and overriding public interest, but in addition, since this is the area of free speech, the statute must regulate with narrow specificity. This law affects expression which is sheltered by the First Amendment and there can be no obscurity in defining permissible limits of such governmental action (Smith v Goguen, 415 US 566). The lack of such precise definition concerned the Supreme Court as far back as 1875 when it said in United States v Reese (92 US 214, 221): "It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large.”
Having made the determination stated herein, the additional charge of obstructing governmental administration (Penal Law, § 195.05) must also fall. The statute states that one violates it "by * * * intimidation, physical force or interference, or * * * any independently unlawful act.” No intimidation or force is alleged, and "interference” means physical interference in the context of this statute (see Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 195.05, pp 395-396). After finding the statute unconstitutional as to this defendant, his act could not be independently unlawful — and if his speech is constitutionally protected, he cannot be punished for exercising that right by giving his alleged criminal act a different name.
The writ of habeas corpus is granted and the petitioner is discharged from custody.