Cooke, J.
The underlying criminal action against petitioner Dondi rightly belongs within the jurisdiction of the District Attorney of Queens County.
In this article 78 proceeding in the nature of prohibition, petitioner Dondi seeks to prohibit respondent Jones, a Justice of the Extraordinary Special and Trial Term of the Supreme Court, and respondent Nadjari, a Deputy Attorney-General and a Special Prosecutor, from trying petitioner on an indictment accusing him of certain crimes now pending in the Supreme Court of Queens County. The Appellate Division, unanimously with four Justices participating, granted the *11 petition and dismissed the indictment. Respondents Jones and Nadjari appeal.
It is claimed that Dondi, an attorney, was retained to represent one Evans in a proposed civil case, Evans having been involved in an automobile accident which had been investigated by Police Officer Gaughn; that Dondi sought out Gaughn and offered money in exchange for a change of testimony by the officer which would be favorable to the client; and that, after at first refusing the money, Gaughn, in co-operation with the Special Prosecutor, met with Dondi at the attorney’s office in Queens and received funds for the altered testimonial version to be advanced in a planned civil action. On November 14, 1974, a Grand Jury of the Extraordinary Special and Trial Term of the Supreme Court in Queens County filed a two-count indictment accusing Dondi of bribery in the second degree and bribing a witness, in violation of sections 200.00 and 215.00 of the Penal Law.
Dondi, on December 13, 1974, moved for dismissal of the indictment on the ground that the Special Prosecutor was without jurisdiction under Executive Order 57 (9 NYCRR 1.57) and on February 6, 1975, the said Extraordinary Term (Murtagh, J.) denied the motion stating that the terms of said order "are prima facie sufficiently broad to sustain the Special Prosecutor’s jurisdiction.” Dondi moved for reargument on February 13, 1975 and Justice Murtagh, in an opinion dated December 19, 1975, stood by his original decision but stated, "[ajfter * * * long consideration”, inter alia:
"The calendars of the Extraordinary Special and Trial Terms of the Supreme Court in four of the five counties of the City of New York contain substantial numbers of cases that have a similar question as to the jurisdiction of the Special Prosecutor. The common denominator in all these cases is the question whether any of them involve 'corrupt acts or omissions by a public servant’ within the meaning of an appropriate Governor’s Executive order in that the public servant was merely feigning his willingness to be corrupted.
* * *
"This Court has decided similar motions in other such cases adversely to the defendants involved but confesses a growing lack of conviction of the correctness of the rulings. The ambiguity of the language of the executive order is such as to permit a ruling to either effect.
*12 "The defendant’s position in this case is even more arguable in the light of the phrase in executive orders 'arising out of, relating to or in any way connected with the enforcement of law or administration of criminal justice.’
* * *
"It is believed that all such cases, and particularly this one, would better be referred to the district attorney of the appropriate county for prosecution. * * * any issue of jurisdiction or lack of jurisdiction can thereby be avoided. * * *
* * *
"In the event that the Special Prosecutor elects to proceed with such trials, counsel will be free to move for a reargument on this subject, and the justice in the trial term is to be free to rule on the matter de novo and is not to consider himself bound to follow this Court’s ruling.”
Again, Dondi moved for dismissal, this time before respondent Jones, to whom the case had been assigned for trial, and the motion was once more denied on February 20, 1976.
This prohibition proceeding ensued. The petition prayed that an order issue prohibiting respondents from trying petitioner on the indictment but did not ask for dismissal of the indictment. It is contended that the Special Prosecutor had neither the authority to present evidence against petitioner before the Grand Jury nor authority to prosecute him on the indictment which that body returned and that, for these reasons, respondent Jones is without power to preside at the trial. Premised on the terms of the Executive Order, it is argued that this lack of authority arises from the lack of a corrupt act by a public servant, as well as the absence of relationship between any corrupt act and the enforcement of law or administration of criminal justice in the City of New York.
The threshold question involves the availability of prohibition as a remedy. Originally used by the English king to curb the powers of ecclesiastical courts, prohibition has evolved into a basic protection for the individual in his relations with the State (La Rocca v Lane, 37 NY2d 575, 578; 23 Carmody-Wait 2d, NY Prac, § 145:205). Rooted in the common law, it has been a statutory remedy in New York for many years and CPLR 7803 now provides that one of the questions that may be raised in an article 78 proceeding is "whether the body or *13 officer proceeded, is proceeding or is about to proceed without or in excess of jurisdiction” (subd 2).
It is realized full well that the extraordinary remedy of prohibition lies only where there is a clear legal right and only when the body or officer "acts or threatens to act without jurisdiction in a matter over which it has no power over the subject matter or where it exceeds its authorized powers in a proceeding over which it has jurisdiction” (Matter of State of New York v King; 36 NY2d 59, 62; Matter of Nigrone v Murtagh, 36 NY2d 421, 423-424). It must be directed to some inferior judicial tribunal or officer and lies to prevent or control judicial or quasi-judicial action only, as distinguished from legislative, executive or ministerial action (Matter of Kaney v New York State Civ. Serv. Comm., 190 Misc 944, 951 [Halpern, J.], affd 273 App Div 1054, affd 298 NY 707; 23 Carmody-Wait 2d, NY Prac, § 145:215, p 788; see Comment: The Writ of Prohibition in New York—Attempt to Circumscribe an Elusive Concept, 50 St John’s L Rev 76, 84). A public prosecutor is a quasi-judicial officer, who performs important duties within our judicial system, and is subject to prohibition under proper circumstances not alone confined to double jeopardy situations (Matter of Simonson v Cahn, 27 NY2d 1; People v Fielding, 158 NY 542, 547; Matter of Nolan v Court of Gen. Sessions of County of N. Y., 15 AD2d 78, affd 11 NY2d 114; People ex rel. Luetje v Ketcham, 45 Misc 2d 802, 804; Matter of McDonald v Goldstein, 191 Misx 863, 865, affd 273 App Div 649).
Prohibition does not issue as of right, but only in the sound discretion of the court (Matter of Hogan v Court of Gen. Sessions of County of N. Y., 296 NY 1, 8; People ex rel. Livingston v Wyatt, 186 NY 383, 393; 23 Carmody-Wait 2d, NY Prac, § 145:214, pp 785-786). In exercising this discretion, various factors are to be considered, such as the gravity of the harm caused by the excess of power, the availability or unavailability of an adequate remedy on appeal or at law or in equity and the remedial effectiveness of prohibition if such an adequate remedy does not exist (La Rocca v Lane, 37 NY2d 575, 579-580, supra; see Comment: The Writ of Prohibition in New York—Attempt to Circumscribe An Elusive Concept, 50 St John’s L Rev 76, 98).
The Appellate Division held that prohibition is appropriate, stating that a clear-cut question of the Special Prosecutor’s jurisdiction is presented and that it saw no reason why *14 petitioner should have to await a possible conviction in order to vindicate his position, particularly since he is an attorney who would be automatically disbarred upon conviction. This position as to the harm to be visited upon petitioner in the event of disbarment was rejected in Matter of Nigrone v Murtagh (36 NY2d 421, 425, supra) where appellant also was a member of the Bar. Here, the Special Prosecutor, in his brief, waives the claim that prohibition is not available and "strenuously” urges that this court decide the proceeding on its merits. It is stated that "a resolution of the merits is essential for the proper disposition of this and similar cases”, over 30 in number as listed in Exhibit 1 of his brief, and that, without indication from this court, trial courts will be left in a quandary as to how to proceed in these cases. Justice Murtagh’s decision on reargument recognizes the existence of "substantial numbers” of cases that have a similar question as to the jurisdiction of the Special Prosecutor. It is not jurisprudential folly to clarify the point, and even the Special Prosecutor asks for clarification. In the exercise of discretion, a court may consider the desirability of the prompt settlement of an important jurisdictional question so that a multiplicity of void proceedings in other cases will be prevented (Rescue Army v Municipal Ct. of City of Los Angeles, 28 Cal 2d 460, 467; 63 Am Jur 2d, Prohibition, § 7, p 233), obviously a situation present here. Although not enough alone, the harm to petitioner, in requiring him to proceed to trial and then testing the jurisdictional issue on appeal should there be a conviction, could be considered as an additional reason warranting prohibition.
Prohibition does not issue where the grievance can be redressed by ordinary proceedings at law or in equity, such as by appeal, motion or other ordinary applications, but, if the appeal, motion or other applications would be inadequate to prevent the harm and prohibition would furnish a more complete and efficacious remedy, it may be employed even though other methods of redress are technically available (La Rocca v Lane, 37 NY2d 575, 579-580, supra; Matter of State of New York v King, 36 NY2d 59, 62, supra; 23 Carmody-Wait 2d, NY Prac, §§ 145:216, 145:217, 145:218). Although, on appeal, the Special Prosecutor contends that he has jurisdiction to prosecute the case and requests a ruling on the merits, it is pointed out in his brief that the availability of appeal from the denials of the applications to dismiss the indictment and *15 the existence of a remedy by way of a motion to dismiss preclude collateral review by this article 78 proceeding. Any intimation that there was available to petitioner, at the time this article 78 proceeding was commenced, a motion for dismissal addressed to the Appellate Division pursuant to subdivision 2 of section 149 of the Judiciary Law overlooks the fact that petitioner, having obtained denials upon his previous motions, was precluded from seeking to overturn the prior determinations by a de novo motion in the Appellate Division (see People v Grennan, 283 App Div 987, affd 307 NY 691; see, also, People v Glen, 30 NY2d 252, 262-263). It is fundamental that, in the absence of a statutory exception (e.g., CPL 710.40, subd 4) and in order to prevent vexatious and repeated applications on the same point, a motion once fully heard and decided cannot be revived again or renewed unless with leave of the court or Judge who denied it or if made upon presentation of new facts which have occurred since the denial of the previous motion (see Belmont v Erie Ry. Co., 52 Barb 637, 642; New York Cent. R. R. Co. v Beacon Milling Co., 184 Misc 187, 191; 2 Carmody-Wait 2d, NY Prac, § 8:73, pp 94-95; Tripp, Guide to Motion Practice, pp 29-30). Furthermore, a court should not ordinarily reconsider, disturb or overrule an order in the same action of another court of co-ordinate jurisdiction (cf. Mount Sinai Hosp. v Davis, 8 AD2d 361, 362-363). Thus, petitioner’s failure to institute a motion under subdivision 2 of section 149 of the Judiciary Law does not operate as a bar to prohibition.
Viewed in the light of the Executive Order, petitioner’s claim of "arrogation of power” by the Special Prosecutor, based on the arguments that there is no corruption by a public servant nor involvement with the enforcement of law or administration of criminal justice in the City of New York, is "substantial” (see La Rocca v Lane, 37 NY2d 575, 580, 581, supra). The issue goes to the very authority or power and, thus, jurisdiction of the officer, not to a mere mistake or "an error in procedure or substantive law during a litigation”. In the court’s discretion, it should be reviewed by way of prohibition.
On September 19, 1972, Governor Rockefeller, by five separate Executive Orders, almost identical and numbered 55 to 59, inclusive (9 NYCRR 1.55-1.59), ordered the Attorney-General to supersede the five District Attorneys in New York City and to prosecute certain defined types of corruption in the five *16 counties within said city. In turn, the Attorney-General appointed Maurice H. Nadjari as Deputy Attorney-General and Special Prosecutor. Executive Order 57, applicable to Queens County, in pertinent part, required the Attorney-General to investigate and prosecute: "(b) any and all acts and omissions and alleged acts and omissions by any person occurring heretofore or hereafter in the County of Queens in violation of any provision of State or local law and arising out of, relating to or in any way connected with corrupt acts or omissions by a public servant or former public servant arising out of, relating to or in any way connected with the enforcement of law or administration of criminal justice in the City of New York”. As distinguished from paragraph (a) of the order, which relates to "corrupt acts and omissions by a public servant or former public servant”, paragraph (b) is addressed to "acts and omissions * * * by any person” who has corrupted or attempted to corrupt public servants or former public servants, or who will do so, in the geographical and legal areas specified.
It is syllogized that petitioner is alleged to have offered to bribe a police officer but the police officer was honest and did not succumb to being bribed and, therefore, that the charged acts were in no way related to "corrupt acts and omissions by a public servant”. The defect in this reasoning is apparent, since it cannot be concluded on these or any other premises that an attempt to corrupt a public servant by offering and giving him a sum of money as a bribe is not "relat[ed] to or in any way connected with corrupt acts or omissions by a public servant”, broad yet explicit language indeed. In short, the officer need not be corrupt himself.
As a second basis for lack of jurisdicion, it is urged that the alleged bribe was given in an effort to influence the testimony of a police officer in a projected purely civil personal injury action and that the Special Prosecutor has no jurisdiction except for cases where the committed corrupt act relates to "the enforcement of law or administration of criminal justice in the City of New York”. At best, the phrase "enforcement of law” is ambiguous and, noticeably, the order employs the restrictive language of "administration of criminal justice”, rather than the "administration of justice.”
Any ambiguity that may exist in paragraph (b) of the Executive Order arises from the question as to whether the investigation and prosecution are by its terms directed against *17 an individual (or individuals) or an act (or acts). The consequence of the resolution of this ambiguity is that, if the effort is aimed at an individual, then any public servant connected with the criminal justice system would yield jurisdiction to the Special Prosecutor. On the other hand, if the drive of the investigation and prosecution is bottomed on an act, then an act would have to be within the criminal justice system itself or connected with it in order that there would be jurisdiction. Semantically, the more reasonable determination favors the act as the fulcrum about which the issue turns. First, the last words of the opening paragraph are "concerning or relating to” while the first expression of paragraph (b) is "any and all acts and omissions and alleged acts and omissions”. In the second place, the paragraph speaks to "corrupt acts or omissions by a public servant”, rather than to a public servant who has committed corrupt acts. Thirdly, if the crucial factor was the individual rather than the act, then the paragraph would have included language to the effect that the individual (the public servant) had duties to perform in the enforcement of law or the administration of criminal justice.
This interpretation is supported by the unanimous decision of the Appellate Division, First Department, in People v Sam (49 AD2d 732) where members of the New York City Transit Authority Police Department were also officers of a religious organization of transit officers and were indicted by the Extraordinary Special Grand Jury for New York County. They were charged with conspiracy and grand larceny in respect to the theft of society money by overpaying bills submitted by the society’s travel agent in connection with tours. In examining Executive Order 58 (obviously paragraph [a] thereof), it was held: "Three elements are necessary for jurisdiction. In this situation, each of the defendants is a 'public servant’ and the alleged acts are 'corrupt’. However, they do not relate to 'the enforcement of law or administration of criminal justice.’ ” So too, here, the acts charged related to an attempt to bribe a prospective witness, acting as any other witness in a purely civil matter, not related to the enforcement of law or administration of criminal justice.
Significantly, in the preamble of the Executive Order, Governor Rockefeller indicated that it was issued "in view of the recommendation of the Commission to Investigate Allegations of Police Corruption in the City of New York.” That body, known as the Knapp Commission, had recommended to the *18 Governor the appointment of a Special Prosecutor with authority "to investigate and prosecute all crimes involving corruption in the criminal justice process” (Summary and Principal Recommendations of Commission to Investigate Allegations of Police Corruption [1972], p 15). The Special Prosecutor’s goal would be to "supplement regular anti-corruption efforts in the criminal justice process” (p 16). On the same day that the order was signed, the Governor issued a statement in which it was declared: "I have today set in motion a thorough-going investigation and prosecution of corruption at all levels in the system of criminal justice of New York City. * * * Thus, today I have * * * [directed Attorney General Lefkowitz to appoint a Special Prosecutor to investigate and prosecute corruption throughout the criminal justice system of New York City. * * * The Special Prosecutor, under the Executive Order I have issued, will supersede the district attorneys as to investigation and prosecution of corruption at all levels in the system of criminal justice in the five counties of New York City ****** The Special Prosecutor will bring centralized direction and coordination, added manpower and resources, and an exclusive focus on efforts to fight corruption in the criminal justice system.”
Any ambiguity attendant the words "enforcement of law” and "administration of criminal justice” was quickly eliminated. On September 30, 1972, the Special Prosecutor and the District Attorneys of Bronx, Kings, New York, Queens and Richmond Counties issued a joint statement in which they stated that they had arrived at a working agreement to carry out the September 19 order of the Governor. Decisively and constituting an admission by the Special Prosecutor, we find the declaration therein: "It was the intent of this order to supersede only in those cases dealing with corruption relating strictly to the criminal justice process * * *” (1972 Public Papers of Governor Rockefeller, p 1107, emphasis added; see Matter of Sunhill Water Corp. v Water Resources Comm., 32 AD2d 1006, 1008; Browne v City of New York, 213 App Div 206, 233, affd 241 NY 96; Fisch, New York Evidence, § 1063, n 24). Three days later, as shown by an official press release from the Executive Chambers and of even greater significance than the agreement itself, the Governor was quoted as expressing approval of the agreement and as stating: "The scope of the Special Prosecutor’s assignment is to investigate and prosecute corruption at all levels of the criminal justice sys *19 tern”. If the superseding is to be confined strictly to the criminal justice process or system, then obviously the Special Prosecutor’s jurisdiction does not embrace the judicial system in general or the civil justice process in particular. Had the intent been to cover the entire judicial system or process, wording to that effect would have been employed rather than the restrictive term of "criminal justice system”. In examining the minority’s use of an analogy and its reference to claimed "cowcatcher” language in the Executive Order, it must be kept in mind that the "engine of authority”, to which the "cowcatcher” is attached, must itself be kept on the tracks of the "criminal justice system”.
The dissent lists certain Executive Orders made since the original orders of September 19, 1972 and indicates that many of these orders transferred cases from the Special Prosecutor to the local District Attorneys for prosecution "for reasons of practicality”. Of the orders listed, those numbered 57.01, 57.03, 57.06, 57.07, 55.01, 56.01, 58.01 and 59.01 do effectuate a transfer of specific cases but there is nothing in these orders from which it can be gleaned that the action was taken "for reasons of practicality”. It is not unreasonable to infer, based on the statement in the dissent that a majority involved bribery of a police officer who feigned acceptance or immediately arrested the briber, that at least a majority of the transfers were accomplished in an effort to avoid questions of jurisdiction.
The District Attorney is a constitutional officer chosen by the electors of a county (NY Const, art XIII, § 13) whose statutory duties include one "to conduct all prosecutions for crimes and offenses cognizable by the courts of the county for which he shall have been elected or appointed” (County Law, § 700, subd 1). This is not an exclusive grant of power to District Attorneys, however. Subdivision 2 of section 63 of the Executive Law provides for the superseding of a District Attorney, in which event the Attorney-General’s authority and that of the Special Prosecutor appointed by him are limted to and by the scope of the order or requirement of the Governor (Matter of Turecamo Contr. Co., 260 App Div 253, 259; People ex rel. Osborne v Board of Supervisors of County of Westchester, 168 App Div 765, 767). With this restriction in mind and because Executive Order 57 relates strictly to the "criminal justice system”, the Special Prosecutor was not authorized to investigate and prosecute acts relating to a *20 proposed, purely civil action. As to normal prosecutorial functions, the Special Prosecutor was not intended to replace the District Attorneys of the counties within the City of New York.
The Supreme Court, constitutionally, has general original jurisdiction in law and equity (NY Const, art VI, § 7) and, by statute, trial jurisdiction over all felonies (CPL 10.20, subd 1). Since once an extraordinary term is created by the Governor, it becomes a term of the Supreme Court with the same jurisdiction that belongs to any other term, the Extraordinary Special and Trial Term of the Supreme Court, Queens County, does not lack jurisdiction (Matter of Reynolds v Cropsey, 241 NY 389, 395-396; People ex rel. Saranac Land & Timber Co. v Extraordinary Special & Trial Term of Supreme Ct, 220 NY 487, 492). It has an existence independent of that of the Special Prosecutor and of the order or requirement limiting the latter’s jurisdiction.
By this determination we do not free Dondi. Rather, his prosecution for the crimes charged, either under the present indictment or any superseding indictments, should be undertaken by the District Attorney of Queens County.
The judgment of the Appellate Division is modified by striking therefrom the provision that the indictment be dismissed and by dismissing that part of the petition which requests that respondent Jones, as Justice of the Extraordinary Special and Trial Term of the Supreme Court of the State of New York, Queens County, be prohibited from trying petitioner on the indictment pending against petitioner in Queens County and, except as so modified, the judgment should be affirmed, without costs.