OPINION OF THE COURT
Seymour Rotker, J.
The facts leading to the arrest of defendant on January 30, 1978 have been synthesized from the court papers including the accusatory instrument and an affidavit of the District Attorney’s office dated December 27, 1978. For the purpose of the motion before the court the facts are uncontroverted and are as follows:
On December 9, 1977, the defendant initiated telephone contact with Lt. Pirello of the Queens Burglary Squad, N.Y.P.D., in an effort to elicit the officer’s aid in a scheme to "shake down”, or extort money from the defendant’s former employer, a Mr. Freedman (phonetic), the owner or occupant of a warehouse located in the Brooklyn Navy Yard.
As the scheme developed, the officer was solicited by the defendant to go to the warehouse, display his police badge and conduct a bogus inquiry concerning possession of stolen property. The defendant was going to give part of the money "extorted” to the Lieutenant for "not causing their arrest.”
Lt. Pirello never went to the warehouse for the purpose discussed or otherwise participated in any "shake down”; and, in fact, he reported the initial contact to his superiors immediately, and worked with the police department’s Internal Affairs Division on the case during all contacts with Malek, up to his arrest on January 30, 1978.
Various conversations between Malek and Lt. Pirello were taped and indicate that proceeds of the crime would be equally shared.
On January 30, 1979, defendant, Phillip Malek, was arrested and charged with bribery (Penal Law, § 200.00) and criminal solicitation (Penal Law, § 100.05). On April 10, 1978, upon motion of the Assistant District Attorney, the felony charge of bribery was reduced to the misdemeanor, giving unlawful gratuities (Penal Law, § 200.30), and the solicitation charge remained.
*441 ISSUES PRESENTED
The defendant argues that the case at bar is one in which the District Attorney has been superseded; that the District Attorney has not sought or received permission from the office of Special Prosecutor to handle the matter, ergo the District Attorney lacks "jurisdiction” to prosecute the case.
The People argue that the defendant does not have standing to complain; the relief sought by defendant should be tested in an article 78 proceeding; and there is an insufficient nexus between the criminal justice system and the crimes charged in the accusatory instrument to support jurisdiction to prosecute in the Special Prosecutor; there exists no jurisdictional or legal impediment (by the District Attorney) to conviction of the defendant in the local Criminal Court for the offense charged; and the office of Special Prosecutor has outlived its purposes and there is no basis in law for its continuance during the term of the currently elected District Attorney of Queens County (who was not in office when the initial Special Prosecutor was appointed on Sept. 19, 1972). In past cases, defendants have attacked the right of the Special Prosecutor to supersede the role of the District Attorney. In the case at bar, the attack is upon the District Attorney’s right to proceed in a case which this court determines is clearly involving an attempt to corrupt a public official in the criminal justice area.
The Special Prosecutor filed an amicus curiae brief in response to a request by the court.
DISCUSSION
Among the People’s arguments, it was alleged that the defendant lacked standing to move for dismissal of the complaint based on the "jurisdictional” ground.
The Court of Appeals, in People v Rosenberg (45 NY2d 251), held that the order of prohibition should have been treated as an order of dismissal, thus sanctioning the defendant’s right to move to dismiss an alleged jurisdictionally defective indictment.
The court in People v Di Falco (44 NY2d 482) placed such great emphasis upon the proper role of a prosecutor in criminal cases that reliance may be placed on it to support a defendant’s right to move to dismiss an accusatory instrument on a fatal jurisdictional defect in the prosecutor’s authority. *442 The District Attorney, generally, is the prosecutorial officer with responsibility to conduct all prosecutions for crimes and offenses cognizable by the courts of the county in which he serves. (County Law, § 700, subd 1.) As such, he has broad discretion to determine when and in what manner a suspected offender will be prosecuted. The District Attorney may even choose not to pursue the matter at all; and such is within his absolute discretion.
That discretion, however, is predicated upon the District Attorney’s being the officer designated to act as prosecutor in a particular case. Absent that designation, a District Attorney has no authority to represent the People of this State. The questions before this court relate directly to that issue. The duties, responsibilities, authority and discretion in the prosecution of an action involving possible corrupt acts by public officials relating to law enforcement or criminal justice have been expressly delegated to the Special State Prosecutor. Anyone acting in that capacity as prosecutor without the requisite legislative authority is usurping the powers and prerogatives of the Special Prosecutor in his specifically authorized area of discretion. Whether his particular case is being prosecuted by an official unauthorized to do so is a question that may be asked by a defendant and should be answered by the court before which he stands accused. CPL 170.30 (subd 1, par [f]) provides an appropriate procedure and remedy for the disposition of that question.
AUTHORITY TO APPOINT SPECIAL PROSECUTOR
Section 3 of article IV of the New York Constitution contains the powers and duties of the Governor, providing in part that he shall: "expedite all such measures as may be resolved upon by the legislature, and shall take care that the laws are faithfully executed.”
Section 63 of the Executive Law specifies the duties of the Attorney-General in that he shall: "2. Whenever required by the governor, attend in person, or by one of his deputies, any term of the supreme court or appear before the grand jury thereof for the purpose of managing and conducting in such court or before such jury criminal actions or proceedings as shall be specified in such requirement; in which case the attorney-general or his deputy so attending shall exercise all the powers and perform all the duties in respect of such actions or proceedings, which the district attorney would *443 otherwise be authorized or required to exercise or perform; and in any such actions or proceedings the district attorney shall only exercise such powers and perform such duties as are required of him by the attorney-general or the deputy attorney-general so attending. ” (Emphasis added.)
As noted by the court in Mulroy v Carey (58 AD2d 207, 212, affd 43 NY2d 820), the office of the State Attorney-General pre-existed that of county District Attorneys and was the vehicle through which crimes throughout the State were originally prosecuted. "Thus, while it has become the practice for the District Attorney in each county to prosecute the crimes committed therein, the latent power of the Attorney-General to prosecute them has continued. In subdivision 2 of section 63 of the Executive Law, the Legislature merely drew upon the historical role of the Attorney-General to serve the Governor in the performance of his constitutional duty to see to it that the laws of the State are executed.”
The court upheld the power of the Attorney-General to supersede a local District Attorney, when directed by the Governor, in Matter of Turecamo Contr. Co. (Bennett) (260 App Div 253), stating that although the office of District Attorney was provided for in the State Constitution, it did not follow that the Legislature was without constitutional power to authorize the Attorney-General to investigate, thus superseding a local District Attorney. The Constitution did not attempt to prescribe the functions of the office of District Attorney nor did it vest the prosecuting function exclusively in that office. Historically, the District Attorney was not the sole prosecutor in the State since under common law only the Attorney-General’s office had existed.
Where the Constitution commands the Governor to take care that the laws be faithfully executed, the power to supersede a District Attorney may be implied.
The statute in Turecamo (supra) did not attempt to place a time limit on the investigation by the Attorney-General and it would be quite unreasonable that his authority should be terminated arbitrarily by the collateral circumstance that a new District Attorney had taken office. In this case the result of such a holding would be particularly unreasonable, since the investigation was not directed only against the District Attorney but also against all of the other members of his staff. If the Attorney-General’s authority terminated when the new District Attorney assumed his functions, the latter official *444 would be engaged in an investigation of his own office staff. Although the executive orders in this case were in some respects extremely broad, the court held that they might reasonably be construed to reach only matters occurring during the incumbency of the District Attorney holding office at the time of the Governor’s mandate, and, subject to this limitation, it held that the investigation could be continued until the actions and proceeding pursuant to it were concluded. Of interest also is the fact that the Executive Order in Turecamo was never reaffirmed by the Governor after the new District Attorney took office although the Extraordinary Terms of the Supreme Court were extended.
The Court of Appeals had occasion to examine the Executive Order which is before this court in Dondi v Jones (40 NY2d 8, 15-16): "On September 19, 1972, Governor Rockefeller, by five separate Executive Orders, almost identical and numbered 55 to 59, inclusive (9 NYCRR 1.55-1.59), ordered the Attorney-General to supersede the five District Attorneys in New York City and to prosecute certain defined types of corruption in the five counties within said city * * * Executive Order 57, applicable to Queens County, in pertinent part, required the Attorney-General. to investigate and prosecute: '(b) any and all acts and omissions and alleged acts and omissions by any person occurring heretofore or hereafter in the County of Queens in violation of any provision of State or local law and arising out of, relating to or in any way connected with corrupt acts or omissions by a public servant or former public servant arising out of, relating to or in any way connected with the enforcement of law or administration of criminal justice in the City of New York.’ As distinguished from paragraph (a) of the order, which relates to 'corrupt acts and omissions by a public servant or former public servant’, paragraph (b) is addressed to 'acts and omissions * * * by any person’ who has corrupted or attempted to corrupt public servants or former public servants, or who will do so, in the geographical and legal areas specified.”
Subdivision (d) of section 1 of the Executive Order also requires the Attorney-General to investigate and prosecute:
"any and all acts and omissions and alleged acts and omissions occurring heretofore or hereafter to obstruct, hinder or interfere with any inquiry, prosecution, trial or judgment pursuant to or connected with this requirement; and that you conduct, manage, prosecute and handle such other proper *445 actions and proceedings relating thereto as may come before said court and that you conduct, manage, prosecute and handle all trials at said extraordinary term of court or at any term of said court at which any and all indictments which may be found and which may hereafter be tried, pursuant to or in connection with this requirement, and in the event of any appeal or appeals or other proceedings connected therewith, to manage, prosecute, conduct and handle the same; and that in person or by your assistants or deputies you, as of the date hereof, supersede and in the place and stead of the District Attorney of the County of Queens exercise all the powers and perform all the duties conferred upon you by the statutes and law in such case made and provided and this requirement made hereunder; and that in such proceedings and actions the District Attorney of the County of Queens shall exercise only such powers and perform such duties as are required of him by you or your assistants or deputies so attending(Italics added.)
"While the Knapp Commission Summary did not specifically recommend that the proposed Special Deputy Attorney General have exclusive jurisdiction, the Governor’s Executive Order does provide for such exclusive jurisdiction. Apparently, administrative difficulties and potential interference — intentional or unintentional — with investigations of official corruption mandated exclusive jurisdiction in a Special Prosecutor with absolute discretion to prosecute or investigate a given case or to direct a District Attorney to perform either or both functions.
"The Governor’s executive order calls for the investigation and prosecution of corrupt acts connected in any way to the administration of the criminal justice system in New York City when committed by a public servant or any other individual whose conduct is in any way related to the corrupt act of a public servant. The order encompasses such corrupt acts whether they occurred before or after issuance of the order.” (Pitler, Superseding the District Attorneys in New York City —The Constitutionality and Legality of Executive Order No. 55, 41 Fordham L Rev 517, 536.)
In the definitional section of the order (9 NYCRR 1.57 III [c]), the term "corrupt acts and omissions” includes but is not limited to:
"(3) any and all acts or omissions or alleged acts or omis *446 sions constituting a violation of the following sections or of the sections within the following articles of the Penal Law:
* * *
"(iv) Article 200 (Bribery involving public servants and related offenses) * * * (4) any and all acts or omissions or alleged acts or omissions constituting a violation of Penal Law, articles 100 (Criminal Solicitation) * * * with respect to offenses defined in paragraph (3).”
On September 30, 1972, the District Attorney’s offices of the five boroughs and the Special Prosecutor arrived at a working agreement to implement the Governor’s Executive Order. They indicated that the intent of that order was to supersede only in those cases dealing with corruption relating strictly to the criminal justice process, including such people as police among many others.
"3. All new information developed subsequent to September nineteenth that could lead to new investigations will be reported as it is obtained to the Special Prosecutor.
"A. The District Attorneys will conduct those investigations which are designated by the Special Prosecutor after he has reviewed them with the District Attorneys. (Again it is anticipated that in the large majority of cases the new information will be investigated by the District Attorneys.)
"In these cases, the District Attorney will proceed before the Grand Jury in his own name.
"B. The Special Prosecutor will conduct those investigations which he determines after he has reviewed them with the District Attorneys and given a reason for so doing.” (1972 Public Papers of Governor Rockefeller, p 1107; emphasis added.)
Working agreements among affected local prosecutors and the Special Prosecutor have no force of law and are not interpretive of restrictions or limitations of the Executive Order. However, they do indicate the understanding of the parties as to their duties and obligations. The agreement clearly states that the Special Prosecutor will designate, after review, those investigations to be conducted by the District Attorneys.
By Executive Order No. 57.09 dated January 27, 1977, the Governor extended the requirements of Executive Order No. 57 to pertain to the present District Attorney in Queens County (9 NYCRR 1.57.09):
*447 "WHEREAS, on the thirty-first day of December, nineteen hundred seventy-six, the District Attorney of Queens County resigned; and
"WHEREAS, on the first day of January, one thousand nine hundred seventy-seven, the term of the newly appointed District Attorney of Queens County commenced;
"NOW, THEREFORE, I do hereby reaffirm and continue the order and requirement upon you, embodied in Executive Order Number 57”. (Italics added.)
On or about January 27, 1979, Governor Carey reaffirmed the Executive Order in all aspects.
The history of this particular Executive Order shows a continuous renewal and reaffirmance by each successive Governor with respect to each successive Queens County District Attorney. Indeed, the Governors have indicated the continuous nature of the Special Prosecutor’s office by renewing it on a city-wide basis in relation to the successive District Attorneys in their respective counties.
The People contend that the acts alleged to have been committed by the defendant do not arise out of, relate to, nor are they in any way connected with corrupt acts or omissions by a public servant in that: "At all times relevant, Lt. Pirello maintained his honesty and integrity, and only feigned interest and willingness to participate in the extortion scheme. This fact is undisputed. Obviously therefore, as a fact, and logically, he was not a public servant engaged in 'corrupt acts or omissions’.”
Arguing that the Dondi decision (40 NY2d 8, supra) turned entirely upon the last element in the Executive Order (that the acts relate to the enforcement of law or administration of criminal justice), the People would have this court believe that the language on the corruption or noncorruption of the involved police officer was irrelevant to its decision and mere dictum.
In Dondi v Jones (supra, p 16), the court specifically held that an officer who is the subject of a bribe attempt need not be corrupt himself in order for the charged act to be "relat[ed] to or in any way connected with corrupt acts or omissions by a public servant.” This holding was reinforced in People v Rosenberg (45 NY2d 251, 258, supra) "for the Special Prosecutor to retain jurisdiction, it is not necessary that the crime charged must itself constitute a corruption of the public *448 official involved in the criminal justice system.” Judge Fuchs-berg’s concurring opinion found it "irrelevant that neither the law secretary nor the defendant engaged in a specifically determinable act of corruption.” Such language does not appear to be "mere dictum” but rather a basic touchstone for the court’s interpretation of the Special Prosecutor’s jurisdiction.
Chief Judge Breitel’s dissenting opinion in Dondi v Jones (supra) agreed with the majority on several points. No one disputes that the officer was a public servant within the meaning of the order or that the crimes charged were undisputably corrupt acts (Executive Order No. 57; 9 NYCRR 1.57 III [c] [3] [iii]). The majority correctly rejected the defendant’s argument that since the police officer only feigned acceptance of the bribe, his was not a corrupt act or omission by a public servant which idea ignored the expansive purpose of the Executive Order to eliminate patterns of corruption (pp 27-28): "A principal corrupt activity found to be widespread in the city was bribery of public officials, particularly police officers. To combat this corruption the commission recommended a 'campaign against bribers’ * * * Thus, one of the primary purposes for the establishment of the Special Prosecutor’s office was to eliminate the bribery of public officials. Since petitioner allegedly offered the bribe to the police officer to influence his testimony, he was no less a briber of a public official, and therefore a target of the 'campaign against bribers’, because the police officer feigned acceptance to catch a briber and was not actually 'corrupt’. It would be illogical and unrealistic in view of the purpose and breadth of the Executive Order, to bifurcate the Special Prosecutor’s jurisdiction according to the mental state of the bribe receiver.”
Based upon the foregoing exposition, this court finds that the case at bar definitely comes within the ambit of Executive Order No. 57 and therefore, is subject to the authority and jurisdiction of the Special State Prosecutor.
For reasons of jurisdiction, practicality, and the more just enforcement of the Governor’s mandate, the Special Prosecutor may designate that the respective District Attorneys perform certain duties in relation to the investigation and prosecution of matters within the Special Prosecutor’s jurisdiction. Many cases have been transferred from the Special Prosecutor to a District Attorney’s office for full prosecutorial purposes. This, however, is done on a case-by-case basis and the final decision is within the sole province of the Special Prosecutor. *449 The grant of authority to investigate or prosecute a particular case may take different forms pursuant to the co-operation arrangements between the various offices involved. In order to proceed, after his jurisdiction has been questioned, a District Attorney must evidence that the said authority was granted in some manner.
Here, such authority was delegated by the Special Prosecutor’s office to the Queens County District Attorney’s office. Conversations between upper echelon assistants in both offices indicate that the Special Prosecutor did not intend to prosecute and that the District Attorney was to proceed. The District Attorney’s contention that no authority was requested because none was necessary, and that none, therefore, could be granted is not the determinative factor. What is determinative is the fact that, as understood by the Special Prosecutor’s office, its discretion was exercised to permit the prosecution of this matter by the District Attorney rather than by its own office. Authority to proceed vested in the District Attorney via such a one-sided discretionary action whether he acknowledged it or not.
The problems in co-ordinating the prosecution of this matter are apparently based on philosophical differences which have arisen between the prosecutorial offices involved. Proper vehicles for the resolution of those differences and their attendant difficulties exist; but this court is not the proper forum for that resolution. The integrity and effectiveness of the criminal justice administration in this city require the wholehearted communication and co-operation of its chief law enforcement officials. Failure by any prosecutorial agency (be it a local District Attorney or the Special Prosecutor’s office itself) to faithfully and responsibly adhere to the provisions of the Executive Orders in this area may cause it to be subject to an article 78 proceeding for acting without or in excess of its jurisdiction or even, as an extreme measure, to removal proceedings by the Governor for contravening the intents and purposes of an executive mandate.
This court finds, therefore, that the Queens County District Attorney’s office is the proper prosecutor in this matter and there is no jurisdictional or legal impediment to the conviction of the defendant. The motion to dismiss is denied.
Discussions concerning the disposition of defendant’s other motions for various relief are omitted for the purpose of publication.