OPINION OF THE COURT
William H. Keniry, J.
The court in this CPLR article 78 proceeding is asked to grant a writ of prohibition and writ of mandamus, inter alia, enjoining the respondent Surrogate of Fulton County from conducting a hearing, sua sponte, into the administration of an estate and directing the respondent Surrogate to approve a final account.
I
BACKGROUND
The events leading up to this proceeding can be succinctly stated. Heinz Schmidt, who immigrated to this country from his native Germany with his parents as a young boy, died *18 testate on June 24, 1987 leaving an estate valued at just under $1 million. Schmidt was a resident of the City of Johnstown, Fulton County. His last will and testament, after making several specific bequests, directs the establishment of a residuary trust. The trust, once created, is to distribute all income to one Daniel Hannis for his life and upon Hannis’ death, the income is to be paid to the Johnstown Senior Citizens Club for so long as it exists and functions in the City of Johnstown. In the event that the Senior Citizens Club no longer exists and functions, all income is to be distributed to the City of Johnstown for the general benefit of the public at large in the name of charity. The will nominates Norstar Bank of Upstate NY (the Bank) to serve as both executor and as trustee. The Bank retained petitioner Frederick R. Stortecky, an attorney with offices in Johnstown and the drafter of Schmidt’s will, to represent it in the probate of the will and in the administration of the estate. After extensive preliminary proceedings caused in large part by the difficulty in attempting to locate heirs of Schmidt in Germany, the will was admitted to probate and the administration proceeded in due course without major incident.
On January 3, 1992 the Bank presented to the Surrogate’s Court its account and a petition praying that its account be judicially settled. The petition and account were accompanied by consents, general appearances and waivers of citation, executed by all interested parties, namely the executor Bank, Hannis, the Johnstown Senior Citizens Club, the City of Johnstown and the Attorney-General of the State of New York, all duly acknowledged. The aforementioned consents, general appearances and waivers of citation provide as follows:
"the undersigned * * * interested party under the Last Will and Testament of Heinz Schmidt late of the City of Johnstown in the County of Fulton, State of New York, deceased, being of full age, do hereby appear in person and waive the issuance and service upon him of a Citation in the above entitled matter of the final judicial accounting of Norstar Trust Company, formerly Norstar Bank of Upstate NY, under the Last Will and Testament of said deceased: and consent that:
"A Decree be entered in accordance with said accounting, and consent to the payment of Executor’s commissions to Norstar Trust Company, formerly Norstar Bank of Upstate N Y, as set forth in said accounting, in the sum of $36,105.55, *19 and further consent to the payment of legal fees to Frederick R Stortecky, Esq., in the sum of $41,000.00, plus disbursements, as set forth in said accounting, without other or further notice to him.”
The Surrogate sent a letter dated January 29, 1992 to the attorney for the estate stating that "[A] preliminary review of the accounting has been made”. The Surrogate’s letter continued, in pertinent part, as follows:
"In order to resolve some questions, please submit all vouchers, statements and the estate checkbook.
"This request may be broader than is necessary but in order to expedite the process, it may be simpler to have all pertinent information provided in the first instance.”
The Surrogate’s letter also requested an affidavit of legal services "in compliance with § 207.45 of the Uniform Rules— Trial Courts based on contemporaneously maintained time records” (Uniform Rules for Trial Cts [22 NYCRR] § 207.45). Petitioner attempted to comply with the Surrogate’s requests and he submitted additional documentation including a detailed affidavit of his services.
On May 28, 1992 the Surrogate issued, on his own initiative, an order denominated as an "order to show cause directing evidentiary hearing”.[1] The order recited that the court has "found that the petition and final account presented, and the other documentation thereafter submitted in response to the court’s requests, do not completely provide the court with the information upon which to make its determinations.” The order directed that a hearing be held before the court on July 21,1992 to take testimony concerning the following matters:
(1) the receipt and disposition of cash dividends on stock;
(2) the facts and circumstances relating to the decisions to sell 10,000 shares of Pepsi Cola common stock and 5,000 shares of Pepsi Cola common stock;
(3) the funding of the trust set forth in the will and the disposition of the income earned on estate assets during administration;
(4) the manner in which the computations of the executor’s commissions were made;
(5) the reasonableness of the attorney’s fees paid; and
*20 (6) any other and further matters affecting the administration of the decedent’s estate.
The order further directed the executor Bank and the petitioner attorney to appear with their books and records at the hearing and provided that "any interested party, namely Daniel Hannis, the Johnstown Senior Citizens Club, the City of Johnstown and the Attorney-General of the State of New York may attend the hearing in person or by attorney to present witnesses and other evidence relevant to the items of inquiry above set forth.”
The order finally made provision for the manner of service thereof and specified those to be served. The Surrogate then caused service to be made by his office.
The hearing proceeded on July 21, 1992 over petitioner’s objection[2] and was scheduled to resume on July 28, 1992.
On July 21, 1992 an application was made to this court for a temporary restraining order. This court directed that notice of the application be given to respondent and the Attorney-General. The Attorney-General appeared on behalf of respondent and opposed the application. After hearing all parties, this court, on July 27, 1992, signed an order to show cause which contained a temporary restraining order restraining the respondent from conducting the aforesaid hearing pending the determination of the instant application.
Petitioner’s position is premised upon the contention that respondent is acting in excess of his jurisdiction by pursuing an inquiry into the administration of the subject estate.
Respondent moves to dismiss the petition on the ground that it fails to state grounds for relief. Respondent contends that the Surrogate has the power to conduct the inquiry he has undertaken regardless of the fact that consents, appearances and waivers have been filed. Respondent further con *21 tends that prohibition does not lie since petitioner has the remedy of a possible appeal from any subsequent order or judgment of the Surrogate.
Petitioner opposes respondent’s motion.
The Fulton County Bar Association retained counsel and appears amicus curiae in support of petitioner’s position.[3]
n
PROCEDURAL ISSUES
Petitioner questions the timeliness of the service of respondent’s motion papers arguing that under CPLR 7804 (c) and (f) the motion was required to be served on or before August 6, 1992, five days before the return date. The order to show cause was returnable on August 11, 1992. Respondent’s motion to dismiss was served by mail on August 7,1992.
The argument lacks merit. The order to show cause which commenced this proceeding was issued on July 27, 1992, 15 days before the return date. CPLR 7804 (c) requires that a CPLR article 78 petitioner serve an adverse party at least 20 days before the return date unless an order to show cause is utilized to shorten the time and further provides if 20 days’ notice is given, an answer is then due five days before the return date. The order to show cause which commenced this proceeding contained no specific provision setting a time for the service of answering papers. Thus the service of respondent’s motion was timely (W.I.L.D. W.A.T.E.R.S. v Martinez, 148 AD2d 847).
Respondent requests that, in the event the court denies his motion, he be permitted leave to serve an answer. CPLR 7804 (f) provides that if a motion to dismiss on a point of law is denied the court is required to permit the respondent to answer. However, such procedure need not be followed and the proceeding can be resolved on the merits without providing an opportunity to serve an answer if "the facts are so fully presented in the papers of the respective parties that it is clear that no dispute as to the facts exists and no prejudice will result from the failure to require an answer” (Matter of Nassau BOCES Cent. Council of Teachers v Board of Coop. *22 Educ. Servs., 63 NY2d 100, 102; O’Hara v Del Bello, 47 NY2d 363) and "there only remain questions of law, the resolution of which are dispositive” (Matter of Bayswater Health Related Facility v New York State Dept. of Health, 57 AD2d 996, 997; see also, Matter of DeVito v Nyquist, 56 AD2d 159, affd 43 NY2d 681).
Respondent’s motion to dismiss the petition raises a question of law which goes to the heart of petitioner’s claim. The issue has been briefed and argued by the parties. Should the court deny respondent’s motion, little, if anything, would be gained by further delaying the resolution on the merits of the legal issue at hand. The parties have not identified or demonstrated the existence of any material factual issue which would cause the court to refrain from deciding the issue presented.
III
SUBSTANTIVE ISSUES
The threshold issue is whether or not a Surrogate has the power to initiate and conduct an inquiry into the substance of a final account, voluntarily filed by an executor, in an estate wherein all interested parties have executed consent, general appearance and waiver of citation forms and there is absolutely no indication of any fraud or concealment in obtaining such waivers.
If the Surrogate lacks the power to so inquire, the next issue is whether a writ of prohibition should be issued to terminate the inquiry and whether the Surrogate should be directed by writ of mandamus to approve the account as filed.
IV
DISCUSSION
The Surrogate’s Court is a court of limited jurisdiction and has only such power as is conferred upon it by statute (NY Const, art VI, § 12 [d]; Matter of Hyams, 237 NY 211). "The jurisdiction of the surrogate is the creation of statute. If not conferred upon him it [jurisdiction] does not exist” (People ex rel. Safford v Surrogate’s Ct., 229 NY 495, 497).
The court has examined the specific powers conferred upon Surrogates in accounting proceedings. SCPA 201 sets forth the general jurisdiction of the Surrogate’s Court and provides that such court shall "exercise full and complete general jurisdic *23 tion in law and in equity to administer justice in all matters relating to estates and the affairs of decedents” (SCPA 201 [3]). Once jurisdiction of the Surrogate is established, the Surrogate is possessed of "broad discretion to 'make such order or decree as justice shall require’ ” (Matter of Kelly, 147 AD2d 564).
SCPA 2210 specifies those to whom process must issue in a voluntary judicial settlement of an account. Subdivision (7) of section 2210 prescribes that process must be served upon "[a]ll devisees, all trustees of any trust created by the will * * * and all legatees except those who by acknowledged release appear to be paid”. Subdivision (5) of section 2210 requires that notice also be given to the Attorney-General when a charitable trust, such as the one created by Schmidt’s will, is involved. SCPA 2211 sets forth the procedure to be followed in settling a voluntary account. SCPA 401 governs the appearance of parties in proceedings in the Surrogate’s Court and provides that any adult competent party may appear by waiver of process.
The doctrine of stare decisis requires this court to adhere to precedent holdings of the Appellate Division of the Supreme Court, Third Department, and, of course, the Court of Appeals of the State of New York. Where there is "no objection by any interested party and absolutely no indication of any fraud or concealment in obtaining waivers of citation”, a Surrogate may not refuse to approve an account (Matter of Dolan, 176 AD2d 1019, 1020; Matter of Veccio, 49 AD2d 380, revg 81 Misc 2d 1083). The rule is not a recent one. In Matter of De Vany (205 NY 591, revg 147 App Div 494), the Court of Appeals in 1912 held that a Surrogate could not properly surcharge the account of an executor, even where an objection to his account was filed,[4] when the legatee involved in an alleged questionable transfer of a portion of her legacy to the executor signed a release absolving the executor and raised no objection to the transfer. The Court, in its brief decision, was careful to point out that the legatee who did not object was the only person who had any interest in having the payment set aside.
In Matter of Veccio (supra), the Surrogate, absent the filing of an objection by any interested party, questioned the computation of commissions, refused to approve a final account as proposed and directed that all commissions be paid exclusively from the residuary estate. In reversing, the Appellate Division *24 held that the Surrogate could not refuse to approve the account as proposed when the legatees, who would directly benefit from the Surrogate’s action had signed receipts, releases and waivers of citation and also had failed subsequently to object when the issue of the alleged impropriety of the computation and assessment of commissions was brought to their attention.
In Matter of Dolan (supra), an attorney administrator failed to discover savings bonds valued at $73,000 in decedent’s dwelling. The bonds were later found by purchasers of the house. To avoid litigation with the finders of the bonds, the attorney administrator, with the written approval of all of the estate’s distributees, entered into a stipulation whereby the estate paid a $7,500 finder’s fee to the purchasers of the dwelling for the return of the bonds. A final account was filed. Waivers and appearance forms were filed by all interested parties. The Surrogate approved the account but surcharged the administrator’s commission $5,000 for his negligence. He appealed. The Appellate Division reversed holding that the court may not refuse to approve an account where there is no objection by any interested party and absolutely no indication of any fraud or concealment in obtaining waivers of citation. The Court noted that there was no indication that fraud or concealment was employed to obtain waivers from the distributees or that the administrator had concealed information of the circumstances surrounding the discovery of the bonds from the distributees.
The record now before this court is devoid of any indication that the releases, consents and waivers were obtained from the interested parties by any fraud or concealment. Moreover the releases, consents and waivers make explicit reference to the commissions to be received by the Bank and the attorney’s fee to be paid to the petitioner. Even following the service of the order by the Surrogate on May 28, 1992 upon the interested parties, there is no indication that any interested party filed an objection to the account or attempted to rescind any release, consent and waiver of citation.
Although much effort has been focused by the litigants upon the issue of whether or not a Surrogate has the right to review and set a fee for petitioner’s legal services,[5] the court *25 views that issue as ancillary to the broader and more significant issue of whether or not a Surrogate has the statutory power to initiate and engage in what appears to constitute a full-fledged inquiry into the administration of this particular decedent’s estate. If he has that power, then the Surrogate is free to explore whatever issue or issues he deems appropriate, including commissions and attorney’s fees.[6]
It is the court’s conclusion that the respondent does not have the power under the circumstances of this case to initiate and to conduct the inquiry now in progress.
The court reaches this conclusion for several reasons. The first and most compelling reason stems from the established cases of the Appellate Division, Third Department, which hold that a Surrogate must approve an account in full when all interested parties have signed waivers of citation which have been filed and there is no indication of any fraud or concealment in obtaining such waivers. The court finds no reason not to apply such rule to this case. Second, there is no statutory authority under the SCPA provisions governing voluntary accounts which gives a Surrogate the power to initiate an independent inquiry under the circumstances of this case. The court is not an ombudsman and is not empowered, by statute or common law, to engage in an independent inquiry in an estate where a detailed final account is submitted for approval *26 without objection.[7] Finally, the danger of selective investigation outweighs, in this court’s judgment, any benefit to be gained in permitting such a discretionary inquiry. There is no indication in this case whatsoever that the respondent Surrogate is motivated by anything other than a legitimate concern to insure that the estate was properly, fully and competently administered. However the court doubts that the Surrogate’s Court of Fulton County or any other county of this State has the resources to conduct detailed reviews in every final account in each and every estate wherein all interested parties have signed consents, appearances and waivers of citation. If the power to inquire were to be allowed to exist it would have to be employed universally since any practice across the State of permitting selection or favoritism in initiation or declination of inquiry would be intolerable.
V
THE REMEDY
It is respondent’s position that even if the Surrogate is acting in excess of his jurisdiction, as this court has found, such error can be challenged and rectified by taking an appeal from a final judgment issued by the Surrogate. That being so, respondent contends that prohibition and mandamus do not lie.
Petitioner makes the argument that the opportunity to take an appeal in the underlying estate proceeding, though certainly possible, is not dispositive of petitioner’s right to seek prohibition and mandamus. Petitioner contends that if he is limited to the avenue of an appeal to challenge the Surrogate’s action, that such a remedy will result in the expenditure of considerable time, effort and expense by him and those involved in the estate. Petitioner and the estate will be required to participate in an unnecessary and time-consuming *27 hearing. Petitioner has been required to retain counsel. Closure of the estate is delayed. The cost of an appeal will be significant, especially if it includes a full transcript of the proceedings. The inquiry has barely begun. The first two sessions were scheduled one week apart. The Surrogate might well issue further orders to show cause addressing additional specific matters.[8] Petitioner argues that an important and dispositive issue of law is framed in this CPLR article 78 proceeding which can be promptly and efficiently decided.
To determine whether relief in the nature of prohibition and mandamus lies, the court must make a "two-tiered analysis” (see, Matter of Holtzman v Goldman, 71 NY2d 564, 568). First it must decide whether the gravity of the issue presented justifies the relief sought by petitioner which is, of course, extraordinary, and if so, whether such relief is warranted by the merits of the claim.
The Court of Appeals recently summarized the principles which must guide the court in its analysis. In Matter of Holtzman v Goldman (supra, at 569), Judge Simons writing for a five to two majority stated:
"Because of its extraordinary nature, prohibition is available only where there is a clear legal right, and then only when a court — in cases where judicial authority is challenged —acts or threatens to act either without jurisdiction or in excess of its authorized powers (Matter of Rush v Mordue, 68 NY2d 348, 352; Matter of Steingut v Gold, 42 NY2d 311, 315; Matter of Dondi v Jones, 40 NY2d 8, 13). The inquiry is not limited to whether the court has subject matter jurisdiction over the proceeding; 'prohibition is [also] available * * * to prevent a court from exceeding its authorized powers in a proceeding over which it has jurisdiction’ (La Rocca v Lane, 37 NY2d 575, 578-579, cert denied 424 US 968; see also, Matter of Proskin v County Ct., 30 NY2d 15, 18; see generally, Comment, Writ of Prohibition in New York — Attempt to Circumscribe an *28 Elusive Concept, 50 St John’s L Rev 76, 76-84; Wolfram, 'Ancient and Jus’ Writ of Prohibition in New York, 52 Colum L Rev 334, 338-353). Thus, we have entertained prohibition to determine whether the court had exceeded its undoubted powers to control the conduct of counsel in the courtroom (see, La Rocca v Lane, supra) or to rule upon the sufficiency of Grand Jury evidence (Matter of Proskin v County Ct., supra).
"Prohibition will not lie, however, simply to correct trial errors (Matter of Rush v Mordue, supra, at 353). Although the distinction between legal errors and actions in excess of power is not always easily made (see, La Rocca v Lane, supra, at 580), abuses of power may be identified by their impact upon the entire proceeding as distinguished from an error in a proceeding itself proper (Matter of State of New York v King, 36 NY2d 59, 64; see, e.g., Matter of Rush v Mordue, supra [double jeopardy]; Matter of Steingut v Gold, 42 NY2d 311, supra [territorial jurisdiction over crime]).”
In Matter of Proskin v County Ct. (37 AD2d 279, 285, affd 30 NY2d 15, supra), the Appellate Division wrote that "[t]he precedents establish that the granting or denial of a writ of prohibition is essentially an ad hoc determination in each case”. "Prohibition does not issue as of right, but only in the sound discretion of the court” (Matter of Dondi v Jones, 40 NY2d 8, 13, supra). Factors which the court must consider include "the gravity of the harm caused by the excess of power, the availability or unavailability of an adequate remedy on appeal or at law or in equity and the remedial effectiveness of prohibition if such an adequate remedy does not exist” (Matter of Dondi v Jones, supra, at 13).
"Prohibition does not issue where the grievance can be redressed by ordinary proceedings at law or in equity, such as by appeal, motion or other ordinary applications, but, if the appeal, motion or other applications would be inadequate to prevent the harm and prohibition would furnish a more complete and efficacious remedy, it may be employed even though other methods of redress are technically available” (Matter of Dondi v Jones, supra, at 14). When prohibition is sought to restrain a court from acting "[t]he gravity of the harm which would be caused by an excess of power is an important factor to be weighed” (La Rocca v Lane, 37 NY2d 575, 579, supra).
"Mandamus lies to compel the performance of a purely ministerial act where there is a clear legal right to the relief *29 sought” (Matter of Legal Aid Socy. v Scheinman, 53 NY2d 12, 16). An order in the nature of mandamus is "appropriate only where the right to relief is 'clear’ and the duty sought to be enjoined is performance of an act commanded to be performed by law and involving no exercise of discretion” (Matter of Kupersmith v Public Health Council, 101 AD2d 918, 919, affd 63 NY2d 904).
The two remedies sought, prohibition and mandamus, go hand in hand in this case, and their application is interrelated. The legal issue presented is one of sufficient importance and gravity for relief to be granted at this juncture. To restrict petitioner to the avenue of a later appeal to challenge the Surrogate’s action constitutes an inadequate remedy to forestall the harm which is presently being visited upon petitioner and the estate. Although the redress afforded by an appeal in the underlying estate proceeding might be technically available to petitioner (see, Matter of Dondi v Jones, supra, at 14), such redress will not come until after petitioner and those involved in the estate have participated in a hearing which may be lengthy and time consuming. The harm occasioned to petitioner, a sole practitioner, is significant. Petitioner has demonstrated that he has expended considerable time and effort in this court-initiated inquiry to his detriment and has been required to retain counsel to represent his personal interests, an expense which he contends he will personally bear. Even if the Surrogate, after his inquiry, were to find that the account was proper, thus possibly foreclosing an appeal on the merits, the harm done petitioner and the estate would be significant enough to warrant the extraordinary relief which petitioner seeks.
This is not simply a case wherein a petitioner has instituted a collateral proceeding to correct a simple error of law made or about to be made in a pending proceeding. This is a case which has significance in the administration of estates in the Surrogate’s Courts of our State and to those members of the Bar who practice law in the Surrogate’s Courts. Most estate proceedings are resolved by the filing of consents, releases, and waivers of citation. Were Surrogates to have the power to conduct inquiries such as this in each and every uncontested final account proceeding, the finalization of estates would be inordinately prolonged, the practice that competent interested parties can appear in Surrogate’s Court accounting proceedings by filing a consent, general appearance and waiver of citation would come to an end and the courts would be *30 burdened with reviewing accounts which heretofore have been settled upon consent. The Legislature, of course, has the power to enact enabling legislation to accord Surrogates specific power to inquire into the substance of final accounts in cases such as this should it deem it advisable.[9]
The Surrogate in this case is found to have acted in excess of his present power ánd authority. A writ of prohibition and writ of mandamus is hereby issued.
The petition is granted without costs.

. It is clear that what is labeled as an order to show cause is really an order. The said order to show cause did not constitute a motion and there was no return date.

. Petitioner, after receiving notice of the hearing, retained an attorney to represent him at the hearing inasmuch as it became apparent that petitioner himself would be required by the Surrogate to testify. Petitioner met with his attorney, John J. Lynch of Kingston, New York, on July 4, 1992 in preparation for the hearing. By letter dated July 16, 1992, Attorney Lynch notified petitioner that he was required to undergo major open heart surgery in Boston, Massachusetts on July 23, 1992 and that an adjournment should be requested. On July 20, 1992, petitioner requested a continuance because of his counsel’s unavailability due to such surgery. The request was denied. On July 21, 1992, the hearing was commenced over petitioner’s objection. Petitioner retained substitute counsel one hour before the 9:30 a.m. hearing. Substitute counsel applied for an adjournment in order to familiarize himself with the facts and issues and the motion was denied.

. The Fulton County Bar Association made a motion for leave to appear amicus curiae. Respondent did not oppose the motion. The motion was granted and the Bar Association filed a memorandum of law in support of the petition.

. The objection was made by a special guardian for certain infant legatees who had no interest in the legacy involved in the surcharge.

. The court, of course, is aware that as a matter of public policy courts pay attention to fee arrangements between attorneys and their clients (Jacobson v Sassower, 66 NY2d 991). In estate proceedings there is a long *25 line of cases in the Appellate Division, Second Department, which hold that the Surrogate bears the ultimate responsibility of determining what constitutes reasonable compensation for attorney’s services regardless of the existence of a retainer agreement or whether all interested parties have consented to the payment of a fee (see, Matter of Phelan, 173 AD2d 621; Matter of Verplanck, 151 AD2d 767; Matter of Von Hofe, 145 AD2d 424; Matter of Zorek, 131 AD2d 580; Matter of Hertz, 128 AD2d 780; Matter of Stalbe, 130 Misc 2d 725). Yet in Matter of Schmidt (134 AD2d 432, revg in part 135 Misc 2d 85) the Appellate Division, Second Department, reversed a Surrogate and upheld the validity of a stipulation entered into by all interested parties in an uncontested estate accounting proceeding which, in part, provided for the payment of counsel fees of $70,000. The Surrogate had given effect to and approved so much of the stipulation as authorized the fiduciary to compromise various claims asserted against the estate but had vacated the stipulation insofar as it provided for the payment of attorney’s fees. The Surrogate, notwithstanding the stipulation, had fixed and determined the amount of attorney’s fees at $25,000.

. Were the inquiry by the Surrogate in this case limited to attorney’s fees only, the matter might well not rise to such a level of gravity as would justify an exercise of discretion by the court to grant prohibition. Indeed if the inquiry had been so limited the record indicates that petitioner’s application for relief herein might never have been made.

. In Matter of Devlin (182 AD2d 322), the Court upheld the power of a Surrogate to initiate sua sponte a review of an agreed upon contingent fee paid to an "heir locator” firm notwithstanding the fact that the heirs indicated their satisfaction with the firm’s services and felt that the fee was reasonable. SCPA 2112 (1) authorizes a court "on its own initiative * * * to fix and determine the compensation * * * of a person acting under a power of attorney or other instrument described in EPTL 13-2.3 * * * whether or not it has been fixed previously by agreement”. The Appellate Division found that the agreement entered between the "heir locator” firm and the heirs constituted an instrument falling under EPTL 13-2.3 and that the Surrogate properly exercised his discretion in reducing the fee.

. Apparently respondent on or about July 27, 1992 issued on his own initiative and allegedly without notice to petitioner, the executor, or any interested party, a judicial subpoena duces tecum to the Gloversville Federal Savings and Loan Association directing the production of its file concerning the granting of a mortgage loan to the purchaser of Mr. Schmidt’s residence from the estate. The subpoena was returnable at 9:00 a.m. on July 28, 1992. The Bank complied with the subpoena. The order to show cause which commenced the instant proceeding was served upon respondent at 9:30 a.m. on July 28,1992. Petitioner avers that he first learned of the issuance of the subpoena duces tecum on August 6, 1992 when he found the subpoena in the court’s file in the estate of Heinz Schmidt.

. For example SCPA 2112 empowers Surrogates to initiate a proceeding to fix and determine compensation in certain limited instances.