OPINION OF THE COURT
Joseph J. Maltese, J.
The petitioner seeks a writ of prohibition against the respondent, a Judge of the Family Court, claiming that the Family Court lacks subject matter jurisdiction over a change of child custody matter where the Supreme Court originally recognized the petitioner as the custodial parent.[1]
Procedural History
Nora Renzulli, an attorney (petitioner plaintiff mother), and Ronald Renzulli, a journalist (defendant father), were married on August 4, 1973. Two children were born during the marriage — Dante, on August 31, 1984, and Christina, on October 19, 1986. An action for divorce was commenced on March 22, 1994. On April 18, 1996, at the request of Justice Louis Marrero and on the consent of both parties, Justice Michael L. Pesce, the Administrative Judge for the Second Judicial District, assigned the divorce action to the Honorable Royal S. Radin, a Judicial Hearing Officer (JHO), to hear and determine issues of: “divorce, custody, child support, equitable distribution and counsel fees.” On that same day, an inquest was taken and a judgment of divorce based on constructive abandonment was awarded to the plaintiff mother.
*244 At a hearing before JHO Radin on September 18, 1996, the court stated on page 2 of the transcript, “I might add, there is no issue of custody; custody has been afforded to the wife. However, there is an open issue of child support and equitable distribution.”
A proposed judgment of divorce originally contained language which stated: “the court retains jurisdiction of the matter concurrently with the Family Court for the purpose of * * * making such further judgment with respect to maintenance, support, custody or visitation as it finds appropriate under the circumstances.” That language, along with other language, was crossed out before JHO Radin signed it on December 23, 1996.
On January 31, 1997, JHO Radin in an eight-page written decision again reiterated his previous award of custody of the two children to their mother, Nora Renzulli, by writing “Plaintiff-mother is the custodial parent” (petitioner’s order to show cause, exhibit A, at 1). However, a supplemental judgment of divorce dated March 25, 1997 and an amended supplemental divorce dated June 25, 1997 are both silent on the issue of custody, but they both reflect the fact that the father, who lives in Yardley, Pennsylvania, was ordered to pay child support to the mother in Staten Island, New York. The father also exercised visitation with the children, but similarly, no formal award of visitation is listed in the judgments. The supplemental judgments of divorce incorporated by reference the December 23, 1996 judgment and made it “part hereof.” None of the three judgments of divorce include language reserving sole jurisdiction in the Supreme Court or mention the award of custody to the mother.
Notwithstanding the omission of JHO Radin’s custody award to the mother in any of the judgments, it is apparent that the parties lived pursuant to JHO Radin’s decision of January 31, 1997 and the judgments of divorce, as the mother exercised custody and the father exercised visitation and paid the mother child support which was ordered in the amount of $252 per week. The father appealed the child support portion of the judgment to the Appellate Division and was not successful.
On February 22, 1999, the father commenced an action in the Richmond County Family Court seeking custody of the two children, now ages 16 and 13 (Matter of Renzulli v Renzulli, docket Nos. V-587-588/99, F-00946-947/99). In March of 1999, Judge Terrence McElrath appointed a Law Guardian for the two children.
After three court dates on March 15, April 14 and May 18, the Family Court Judge on July 1, 1999 denied on the record the *245 mother’s motion to dismiss the father’s petition based upon a lack of jurisdiction. Judge McElrath memorialized his July 1st decision in a written order dated July 12, 1999, citing Family Court Act § 651 (b) as the authority for the Family Court’s jurisdiction. On August 6, 1999 after a fact-finding hearing with forensic witnesses, the Family Court awarded temporary custody of the children to the father with visitation to the mother who must pick them up in Pennsylvania. The father then picks up the children in New York and drives them back to Pennsylvania.
The mother appealed the temporary custody order, but the Appellate Division, Second Department, denied the motion to stay the Family Court order, asserting that it would not exercise its discretion to entertain an appeal on the temporary order. Hence, the Appellate Division never ruled on the merits of the Family Court temporary custody order.
On March 22, 2000, Justice Patricia DiMango of the Richmond County Supreme Court denied the plaintiff mother’s application to remove the custody case pending in the Family Court to the Supreme Court.
In the instant order to show cause application for a writ of prohibition which was signed by Justice John Leone on March 23, 2000, the petitioner mother asserts that the respondent Family Court Judge wrongfully accepted jurisdiction over a custody petition originated by the father of the children. Moreover, in a second affidavit submitted in support of the application for a writ of prohibition dated April 28, 2000, the petitioner mother seeks that this court assess civil damages and counsel fees against the Family Court Judge pursuant to the Civil Rights Act of 1871, which is incorporated into 42 USC §§ 1983 and 1988, respectively.
The essence of the plaintiff’s claim is that the Family Court Judge wrongfully assumed jurisdiction and then wrongfully awarded custody to the father without a full hearing as to what “subsequent change of circumstances” warranted a change in custody. Consequently, the petitioner claims that the Family Court Judge may be liable for damages because of his improper actions and for counsel fees to defray petitioner’s costs in attempting to correct those acts without proper authority. The petitioner also asserts that the Family Court Judge cannot hide behind the shield of judicial immunity because he had no jurisdictional authority to issue the order changing custody or to consequently impose child support payments to the father.
*246 Finally, the petitioner claims that the father had “unclean hands” in making a false claim for “initial custody” in the Family Court when he knew there was a Supreme Court written decision dated January 31, 1997 by JHO Radin awarding her custody and child support. Petitioner further asserts that this was especially egregious because the father knew he was $30,000 in arrears for retroactive child support due her, pursuant to the judgments of the Supreme Court. Petitioner also states that the father carried on a campaign to denigrate her in the eyes of the children and has alienated the children against her so that she cannot even maintain visitation with them. All of this she claims was motivated by the father who seeks financial gain from her by having custody of the children.
The respondent Family Court Judge originally opted out of this proceeding pursuant to CPLR 7804 (i). However, after the petitioner submitted an amended petition seeking damages personally against him, the Family Court Judge opposed the amended petition on procedural and substantive grounds, as well as by judicial immunity. Since the petitioner’s ex-husband, Ronald Renzulli, would be affected by this court’s decision, his attorney, Norman J. Rosen, Esq., has submitted opposition to the petition for a writ of prohibition by claiming that Judge McElrath was correct in finding that the Family Court could maintain jurisdiction. The father asserts that jurisdiction is had under either Family Court Act § 651 (b) or § 652 (b). He claims the application is frivolous, and seeks sanctions against the petitioner mother.
Lastly, the Law Guardian, Richard D. Katz, Esq., has opposed the application to bar Family Court jurisdiction over this matter. Both the father’s attorney and the Law Guardian argue that by granting the writ of prohibition, this court would nullify the rulings of the Family Court which conducted a hearing where two experts testified that it would be detrimental to the emotional health of their son, Dante, to remain with the mother.
The petitioner claims that those experts did not consider the motivation of the father in seeking custody or that he is alienating the children against her.
Discussion
The Supreme Court is a court of unlimited general jurisdic *247 tion.[2] The Family Court is a court of specialized limited jurisdiction and cannot exercise powers beyond those granted by statute (Matter of Borkowski v Borkowski, 38 AD2d 752 [2d Dept 1972]). The constitutional and legislative grants of jurisdiction to Family Court for resolution of custody proceedings are found in New York State Constitution, article VI, §§ 13 and 19 and also in Family Court Act §§ 447, 467, 651 and 652. Family Court Act § 651 (b)
The Family Court order of July 12, 1999 cited as the authority for its jurisdiction Family Court Act § 651 (b), which reads:
“Jurisdiction over habeas corpus proceedings and petitions for custody and visitation of minors * * *
“(b) When initiated in the family court, the family court has jurisdiction to determine, in accordance with subdivision one of section two hundred forty of the domestic relations law and with the same powers possessed by the supreme court in addition to its own powers, habeas corpus proceedings and proceedings brought by petition and order to show cause, for the determination of the custody or visitation of minors, including applications by a grandparent or grandparents for visitation rights pursuant to section seventy-two or two hundred forty of the domestic relations law.”
The Kings County Family Court in Matter of Merrill I. S. v Joel S. (92 Misc 2d 92 [Fam Ct, Kings County 1976]) did a thorough job of researching the legislative intent of Family Court Act § 651 (b). “ ‘What the bill does is provide a choice of forum in which to initiate custody litigation when the Supreme Court has not already spoken.’ ” (Supra, at 95.) It found that section 651 (b) may be used to initiate a custody proceeding in the Family Court after a matrimonial decree rendered in the Supreme Court only when the Supreme Court has not in its decree spoken to the matter. This is the position taken by the defendant father and by the Family Court. The rationale is *248 that since the judgment of divorce was silent as to custody, and since the Supreme Court did not reserve exclusive jurisdiction to itself over enforcement or modification of matters in the judgment, the Family Court may exercise jurisdiction over initial petitions for custody.
The first issue before this court is whether the Supreme Court spoke. This court finds that the Supreme Court did speak. Unfortunately, no one acted upon it.
The petitioner mother’s position is that the Supreme Court took jurisdiction over the entire matrimonial proceeding and reserved all issues relating to the marriage, including custody, to the Supreme Court. Petitioner claims that custody was granted to her by JHO Radin’s oral decision on September 18, 1996 and in his written decision on January 31, 1997. Alternatively, she also argues that the issue of custody “has not yet been finalized and/or memorialized in a judgment entered in Supreme Court;” therefore, if custody remains open, it should be resolved pursuant to Justice Pesce’s order that JHO Radin (or his successor) must finalize all issues to include custody in the Supreme Court. She buttresses her position by pointing out that the first judgment of divorce, dated December 23, 1996, which only dissolved the marriage, crossed out the language granting concurrent jurisdiction with the Family Court with respect to maintenance, support, custody or visitation. Consequently, she contends that these issues were exclusively reserved to the Supreme Court. However, those issues were ruled upon by the Supreme Court the very next month in JHO Radin’s written decision of January 31, 1997. Unfortunately, all of the provisions of that decision were not properly memorialized in either of the two subsequent judgments of divorce, both of which were drafted by the petitioner’s counsel.
The Appellate Division, Second Department, points out that while it is true that “when an action for divorce and custody has been previously instituted, the Family Court lacks jurisdiction to entertain a custody proceeding during the pendency of that action” absent an order of referral by the Supreme Court (Matter of Poliandro v Poliandro, 119 AD2d 577, 578 [2d Dept 1986], appeal dismissed 68 NY2d 908 [1986]; see also, NY Const, art VI, § 13 [b] [2]), here, however, the action for divorce is no longer pending — three judgments have been issued.
If custody had been finalized and memorialized in a judgment correctly conforming to JHO Radin’s oral decision in the *249 transcript of September 18, 1996 (which could have been included in the first judgment of divorce dated December 23, 1996) and his written decision of January 31, 1997, custody would have been awarded to the mother. Even if an award of custody was now properly memorialized in yet another amended judgment of divorce, it would be nunc pro tunc, referring back to JHO Radin’s decision of January 31, 1997. But that technical procedural correction would not reflect the family situation now.
Moreovér, had the custody clause been properly included in the judgments of divorce, it would not change the ability of the parties to utilize the Family Court to enforce the Supreme Court judgment — it would only change the section of the Family Court Act which authorizes jurisdiction of these matters. This court holds that the Family Court would still have jurisdiction over this petition under section 652 (b) of the Family Court Act which states:
“Jurisdiction over applications to fix custody in matrimonial actions on referral from supreme court
“In the event no such referral has been made and unless the supreme court provides in the order or judgment awarding custody or visitation in an action for divorce, separation or annulment, that it may be enforced or modified only in the supreme court, the family court may: (i) determine an application to enforce the order or judgment awarding custody or visitation, or (ii) determine an application to modify the order or judgment awarding custody or visitation upon a showing that there has been a subsequent change of circumstances and modification is required.” (Emphasis added.)
In 1981, the Legislature enacted Family Court Act § 652 (b) to reconfirm its desire that both the Supreme Court and the Family Court concurrently may enforce or modify custody awards of either court. This statute thereby removed the necessity of language in an order or judgment granting dual jurisdiction with the Family Court over future custody and visitation proceedings. Hence, it also clarifies the scenario when the order or judgment from the Supreme Court is silent on the issue of retaining exclusive jurisdiction over enforcement or modification of custody and visitation matters. Accordingly, the statute provides that the only time when the Supreme Court has exclusive jurisdiction over custody and visitation enforcement or modification proceedings is when the Supreme Court expressly provides for exclusive jurisdiction in an order or judgment.
*250 The Appellate Division, Fourth Department, has held that when a divorce decree is silent regarding future enforcement or modification of its provisions the Supreme Court and Family Court have equal power to entertain motions for modification of the custody and visitation portions of the decree (Metzger v Metzger, 133 AD2d 524 [4th Dept 1987], citing Family Ct Act § 652 [b]). Those were the same facts presented to the Family Court in this case.
Ms. Renzulli’s position contemplates that, had a judgment properly included an award of custody to her, this court would have reserved to the Supreme Court exclusive jurisdiction over the enforcement or modification of custody. Consequently, the Family Court would have no subject matter jurisdiction whatsoever.
But, no such language reserving exclusive jurisdiction to the Supreme Court exists at this time and it is not likely that it would have existed had the judgments included the award of custody. Unless the Supreme Court has a particular interest in a case, or in the interest of judicial economy, an enforcement or modification proceeding would unduly burden another court, the Supreme Court rarely reserves exclusive jurisdiction over custody or visitation matters. Nonetheless, it is still within the judicial discretion of the Supreme Court to either reserve or not reserve exclusive jurisdiction. This was not a contested custody case in 1996 or 1997 when JHO Radin ruled on it. Consequently, it is not likely that he would have reserved exclusive enforcement or modification of custody to the Supreme Court.
Indeed, the Family Court is regularly used to modify or enforce custody, support and other matters involving children. This court recognizes that in most counties, concurrent jurisdiction for modification and enforcement of Supreme Court orders is the norm.[3] The Family Court has more free resources available to it. It maintains a clinic with professional psychologists and certified social workers, which makes it easier for the *251 pro se litigant to enforce or modify not only custody and visitation, but also child support and maintenance. The Supreme Court has no internal resources for these matters.
This court finds that the actions of the respondent, Judge McElrath, were not malicious in finding jurisdiction under Family Court Act § 651 (b), but were simply the well-reasoned opinion of a Judge applying the facts presented to him. Since none of the judgments of divorce awarded custody or reserved exclusive jurisdiction to the Supreme Court, the respondent Judge merely applied the facts to the law and concluded that he had jurisdiction under Family Court Act § 651 (b).
While the Supreme Court is not an appellate court, this court respectfully disagrees with the Family Court’s rationale of treating the father’s petition for custody as an initial application for custody under Family Court Act § 651 (b), which only requires a “best interests of the children” standard, rather than a change in custody. JHO Radia wrote a decision recognizing the mother as the custodial parent, notwithstanding the fact that it was omitted from the judgments of divorce. The Supreme Court, as a court of general jurisdiction and as a court of equity, is compelled to review the substance of a written decision from one of its own Judges which found that custody was with the mother. Rather than dwell on the omission of the requisite form language awarding custody in the judgments,[4] this court acknowledges the substance of the written decision of JHO Radin. For this court to find otherwise is to negate the reality of a prior judicial decision of this court and the history of how this family lived. There is absolutely no testimony in the record or any other evidence that the parties or the Supreme Court changed or abandoned the award of custody to the mother expressed in JHO Radin’s decision.
A change of custody standard requires a clear demonstration of “a subsequent (significant) change of circumstances,” which based on “the totality of circumstances” would warrant a modification of custody in the “best interests of the children” before moving them.[5] The petitioner mother recognizes that she was having a problem raising her teenage son. This was *252 reported to the Family Court by two forensic experts at a hearing before Judge McElrath last summer. The mother claims the court failed to interview the children who are now 15 and 13 years old and would not hear from her expert on how the father alienated the children towards her. There is no written decision from the Family Court outlining its reasons for removing the children from their mother, other than the form order of custody dated August 6, 1999 which entertained the petition under Family Court Act § 651. Again, the Supreme Court is not an appellate court, and consequently this court makes no finding as to whether the Family Court abused its discretion in awarding custody of both children to the father.
The petitioner mother has asserted that the father owes her approximately $30,000 in arrears for child support. Since no petition for same is before this court, no findings are made as to those arrears. Those arrears due the mother may constitute a possible credit in the Family Court proceeding for arrears due and owing the father pursuant to the Family Court’s order of custody and the subsequent order of child support to the father which at this time is being debited from the mother’s State salary. While the support matter is pending before the Honorable Michael Fondacaro, a Hearing Examiner in the Family Court, no petition for the arrears due the mother is pending before the Family Court at this time.
Conclusion
Since there is no finding of bad faith or maliciousness or recklessness on the part of the respondent Family Court Judge, there is no basis for damages or counsel fees under 42 USC §§ 1983 and 1988. Moreover, such relief can only be granted in a plenary action and not in a motion for a writ of prohibition. This court finds that there is no reason to maintain a writ of prohibition in this matter. A writ of prohibition “does not issue as of right, but only in the sound discretion of the court” (Matter of Dondi v Jones, 40 NY2d 8, 13 [1976]; Matter of Peterson v Ray, 138 Misc 2d 31 [Sup Ct, Broome County 1988]).
Consequently, the petitioner mother’s motion to prohibit the Family Court from exercising jurisdiction over a change of custody petition and the enforcement of the child support order is denied. Notwithstanding the foregoing findings, the supplemental petition is also denied on its merits and under the doctrine of judicial immunity (Harley v Perkinson, 148 Misc 2d 753 [Sup Ct, Rensselaer County 1990], affd 184 AD2d 933 [3d Dept 1992], appeal dismissed 80 NY2d 971 [1992]).
*253 Accordingly, all stays imposed on the Family Court are hereby vacated. The petition and supplemental petition for a writ of prohibition are denied.

. This motion was originally motion No. 6 under index number 5338/93, the index number of her prior matrimonial action. Rather than delay this matter to start anew, this court gave the petitioner written leave to purchase a new index number, nunc pro tunc, and dispensed with the requirement to re-serve the parties with another set of the same pleadings.

. NY Const, art VI, § 7:
“Jurisdiction of supreme court * * *
“a. The supreme court shall have general original jurisdiction in law and equity * * *
“b. If the legislature shall create new classes of actions and proceedings, the supreme court shall have jurisdiction over such classes of actions and proceedings, but the legislature may provide that another court or other courts shall also have jurisdiction and that actions and proceedings of such classes may be originated in such other court or courts” (see, this court’s decision in Graves v Graves, 177 Mise 2d 358 [Sup Ct, Richmond County 1998]).

. In Richmond County the Judges have directed the clerks to affix to the judgment of divorce when it is silent one of two alternative rubber stamps to give notice to the attorneys and litigants of the court’s policy of concurrent jurisdiction with the Family Court. These are in conformance with Family Court Act § 652 (b) for custody and visitation and section 466 (a) and (c) for support or maintenance. One stamp reads: “ORDERED, ADJUDGED AND DECREED that all future questions of maintenance, support and visitation are hereby reserved for future determination by this court, Family Court or other Court of competent jurisdiction.” The other stamp reads: “ORDERED AND ADJUDGED that the Family Court shall be granted concurrent ju *251 risdiction with the Supreme Court with respect to the issue of maintenance, child support, custody and visitation.”

. The form of findings of fact and conclusions of law and judgments of divorce are contained in appendix B of the Uniform Rules for Trial Courts (22 NYCRR part 200 et seq.). That language contains the proper form for an award of custody.

. See, Friederwitzer v Friederwitzer, 55 NY2d 89 (1982); Eschbach v Eschbach, 56 NY2d 167 (1982).